## SOUTHWICK *v.* STATE.

### Opinion delivered November 20, 1916.

1. PANDERING—NATURE OF CRIME.—The crime of pandering as denounced in Act 105, Acts of 1913, is but one offense, which may be committed in the different ways enumerated in the Statute.
2. PANDERING—"INTIMIDATION"—"THREATS."—The words "intimidation" and "threats" are used synomously in Act 105, Acts of 1913.
3. PANDERING—SUFFICIENCY OF INDICTMENT.—The indictment, charging defendant with the crime of pandering, held sufficient to charge the offense under Sec. 2 of Act 105, Acts of 1913.
4. PANDERING—INSUFFICIENCY OF THE EVIDENCE.—Defendant was charged with the crime of pandering, and that he by force, fraud and intimidation caused his wife to lead a life of prostitution. *Held,* the evidence was insufficient to sustain the charge.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

*E. H. Vance, Jr.,* for appellant.

1. The indictment is bad and the demurrer should have been sustained. 110 Ark. 318; 111 *Id.* 214; 114 *Id.* 310.

2. The testimony is insufficient to sustain a case of pandering.

3. The instructions for the State were erroneous.

*Wallace Davis,* Attorney General, and *Hamilton Moses,* Assistant, for appellee; *D. D. Glover,* of counsel.

1.    While the time and place of some crimes must
be alleged and proved the general rule is that neither
need be done, provided only, that the felony must be
alleged.    34 Ark. 321; 102 *Id.* 393; 92 *Id.* 413; 99 *Id.*
126.    It is sufficient to follow the language used in the
statute and the indictment only states one offense.    111
Ark. 214-217; 64 *Id.* 231; 70 *Id.* 290.

2.    The demurrer was properly overruled.    The
indictment is sufficient.    Kirby's Digest, §§ 2227-9;
111 Ark. 214-218.    The instructions were correct.

WOOD, J.    Appellant was convicted under Act 105
of the Acts of 1913, page 407, of the crime of pandering.
The charging part of the indictment is as follows:
"Said C. E. Southwick, in the county and State afore-
said, on the 13th day of April, A. D. 1916, did unlaw-
fully and feloniously, by force, fraud, intimidation or
threats, and by the use of his position of confidence and
authority, cause his wife, Leetta Southwick, to lead a
life of prostitution, and procured other persons to in-
duce his wife to lead a life of prostitution, and to have
intercourse with her, he being then and there her hus-
band, and she being then and there his wife, against
the peace and dignity of the State of Arkansas."

The section of the act under which appellant was
indicted reads:    "Any person who, by force, fraud,
intimidation or threats, places or leaves, or procures
any other person or persons to place or leave, his wife
in a house of prostitution or to lead a life of prostitution,
shall be guilty of a felony and upon conviction thereof
shall be sentenced to the penitentiary for not less than
two nor more than ten years."

(1)    Pandering is but one offense, under the stat-
ute, and may be committed in the different modes
therein enumerated.    The indictment charges the of-
fense as having been committed in the mode mentioned
in section 2 of the act.

(2)    "Intimidation," in law, is "the use of vio-
lence or threats to influence the conduct or compel the
consent of another."    To intimidate is "to restrain by

threats."· Webster's Dictionary, "Intimidation," "Intimidate." The words "intimidation," "threats" were used in the statute synonymously.

The use of the disjunctive "or" between the words "intimidation" and "threats" in the statute was not in the sense of indicating that they are two different things, but was only used as an alias to designate the same thing by different words. The use of the words "intimidation" and "threats" thus connected by the use of the word "or" only means one and the same thing. If the word "or" had been used in the sense of disconnecting the words "force," "fraud," and "intimidation," so as to indicate that the pandering was done in either one of these ways, then the indictment would have been uncertain, and hence defective. *Thompson* v. *State*, 37 Ark. 408.

"In an offense created by the statute, it is generally sufficient to describe the offense in the words of the statute." See cases cited in 5 Encyclopedic Dig. of Ark. Reps., p. 645.

In *Blais* v. *State*, 94 Ark. 327, the indictment charged that the defendant "did forge a writing or paper." We held that the use of the word "or" in that connection did not describe the instrument alleged to have been forged in the alternative, since the words "writing" and "paper" clearly amounted to the same thing.

(3) The indictment uses the words, "and by the use of his position of confidence and authority." These words are found in the first section of the act, and are intended to describe the offense when a person occupying a position of confidence or authority uses such relation to take, place, harbor, inveigle," etc., any female to any place in the State in which prostitution is practiced. These words, "and by the use of his position of confidence and authority," are clearly out of place in an indictment where the charge of pandering is other than that of placing a female in some house or prostitution. It is clear that the indictment was not intended to charge pandering by

placing the female in a house of prostitution, or in any place where prostitution is practiced, the only charge being that he caused his wife, by the methods indicated, to lead a life of prostitution. But these words may be stricken from the indictment as surplusage. They are not a necessary part of the' description of the offense. We conclude therefore that the indictment, though artlessly drawn, is nevertheless sufficient to charge the offense under the second section of the act.

The testimony on behalf of the State tended to prove that the appellant asked certain men on the streets of Malvern, to go upstairs to a certain room, giving the number, at a certain hotel, stating to them that there was a woman there who wished to see them. He told one of the men to knock on her door. The witness knocked at the door, and the woman said, "Come in." When he entered she told witness that he ought to get out to work; asked the witness if there were any men that he could send in to see her, stating that she would pay him for his work; that both the husband of the woman and the woman herself stated to the witness that they would pay him fifty cents each for the men whom witness might send to her. Witness went out on the streets and spoke to one man, who didn't care to go up. Another man said he would go up. Witness accompanied this man to the door of the woman's room between 10 and 11 o'clock at night. The woman and appellant were in bed. Appellant told witness to take the man in another room and wait until appellant put his clothes on.

Another witness, who was night marshal of the town, stated that he met appellant on the street and appellant told him there was a woman upstairs, and asked the witness if he did not want to go up to her room. Witness went up to the room at night, with a negro whom he had arrested, and, on knocking at the door, appellant opened the door and said, "take them in the other room." Appellant was in bed with a woman who he said was his wife. Witness got the marriage license out of appellant's pocket. When witness ar-

rested appellant his wife never opened her mouth. She acted like she was scared to death. Witness stated that appellant seemed to control her in the justice court. When she was in his presence she seemed to be afraid of him, but when in his absence she would talk freely about the way he was doing her. Witness went back the next morning and arrested the woman about 10 o'clock.

Other witnesses testified to the effect that appellant asked them to meet the woman designated as appellant's wife at another place down in a certain pasture, and that they did so. One of them said that he took a stroll with the woman and had sexual intercourse with her. One of these witnesses stated that he was present at the examining trial, and after he was bound over the woman said to be his wife visited the jail in which he was confined; that when she was in appellant's presence, she was not natural—seemed to be intimidated. When she was out of his presence, she seemed natural. Appellant told witness that the woman was his wife.

, On cross-examination, this witness stated that the woman was not forced to come to the jail to see appellant; that appellant was in jail handcuffed, and witness supposed that made his wife unnatural.

The town marshal testified that he was present at the examining trial and noticed the appearance of the woman. She would talk about the case when she was away from him, but would not talk much when she was near him. She seemed afraid of him when in his presence; she seemed intimidated by him and was afraid to talk.

Another witness testified that "she hesitated to give testimony against him; seemed like she was intimidated;" that appellant's expressions were pretty scornful.

The testimony of the woman was to the effect that she was the wife of the appellant; that she was in bed with her husband at the time the man knocked on the door. She stated that she had been keeping up the practice of having sexual intercourse with men for the last five

months; that she charged from three to five dollars each; that her husband, for a while, did not know that she was receiving men, but that he had known it for the last three months. Stated that she was to pay the negro porter for bringing the men to her the sum of fifty cents.

The appellant himself testified that the woman that was with him in the hotel at Malvern was his wife; that he knew that his wife was crooked before he married her, but thought that she had reformed. He knew her about nine months before they were married; that he never induced his wife to lead a life of prostitution, but told her that if he ever heard of her doing anything like that he would leave her; that he never induced others to induce her to lead a life of prostitution.

(4) Giving the testimony its strongest probative force in favor of the State, it is wholly insufficient to sustain the charge in the indictment. The testimony of appellant and of the woman herself shows that the woman was a prostitute before appellant married her, and there is no testimony tending to prove that appellant, "by force, fraud and intimidation," caused his wife to lead a life of prostitution. There is some proof tending to show that appellant sought to induce others to have intercourse with his wife, but this is not sufficient to show that by force, fraud, intimidation and threats he procured other persons to place or leave his wife in a house of prostitution or to lead a life of prostitution. There is an utter absence of evidence tending to show that the life of prostitution which the woman was leading was any other than voluntary upon her part. The proof as to the force, fraud and intimidation breaks down, and the instructions of the court, under this evidence, were abstract and erroneous. The court should have granted appellant's prayer for an instruction, telling the jury "to find the defendant not guilty."

The judgment is therefore reversed and the cause is remanded for a new trial.

HUMPHREYS, J., not participating.