D. T. HARGRAVES, Jr. *v.* CONTINENTAL ASSURANCE COMPANY

5-5055                                                    448 S. W. 2d 942

Opinion delivered January 12, 1970

*W. G. Dinning, Jr.,* for appellant.

*Anderson & Anderson,* for appellee.

CONLEY BYRD, Justice. Appellant D. T. Hargraves, Jr., claimed that, under the terms and conditions of a group policy issued by appellee Continental Insurance Company to Interstate Grocer Company, he was entitled to recover medical expenses incurred by him. The trial court found that appellant was not a full time employee and therefore excluded under the terms and provisions of the policy coverage. For reversal appellant relies upon the following points:

"I.    The appellant was insurable under the terms and conditions of the master policy and the application attached thereto.

II.    After the issuance of the certificate of insurance and the acceptance of premiums thereon, the appellee had the burden of proof showing that the appellant came within the exclusion provisions of the policy."

The record shows that Mr. Hargraves is a partner in the Hargraves Insurance Agency and as such is a general agent for appellee. In such capacity he had participated in placing the master policy here involved with Interstate Grocer Company in 1959. In 1966 he began to acquire stock ownership in Interstate Grocer Company and thereafter became a member of the Board of Directors. Later he was elected Vice President. A certificate of insurance under the group policy was issued to him in January, 1967, upon an application that made no inquiries about the status of the applicant relative to temporary or part time employment. With reference to his duties Mr. Hargraves testified as follows:

"Q.    Now as a Vice President, which I believe you show that you are, what are your duties with the corporation?

A. My duties are, I would say, would be if you call them a duty, to consult with Mr. Max Moore, the principal, who is the President and generally operates the business. I have been going over there a couple of times at least a week and sometimes going over to sign checks when he wasn't there, taking at times inventories, check over the accounts receivable, check over the accounts receivable on occasion, consult with him about the condition of the equipment, buildings, etc.

Q. Is that in your capacity as Vice President or member of the Board? Or as both?

A. It would be as both—as first Vice President and member of the Board.

Q. Do you have a fixed salary as Vice President?

A. No, I do not."

The policy provision in question here provides:

(4) ELIGIBILITY:

(a) CLASSIFICATION AND DEFINITION: All individuals in the following classes are eligible for insurance under the Policy:

| Class | Definition |
|-------|------------|
|  | *All Employees* |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

(b) EXCLUSIONS: All individuals in the following classes are to be excluded from coverage: *Drivers & Part Time or Temporary Employees*

We find more than ample evidence to substantiate the trial court's finding, sitting as a jury, that appellant was not a full time employee.

It has been suggested that the phrase "Drivers and part time or temporary employees" can be construed, because of the disjunctive "or", to exclude only those persons whose employment status is on a casual, transient or transitory basis without any idea of a permanent or prolonged status, rather than those whose regular employment is not full time. We do not agree. The phrase "part time" is defined by Merriam-Webster New International Dictionary (2d ed.) as:

"Less than full time. Also employment at less than the customary number of hours per week."

On the other hand "temporary" is defined as:

"Lasting for a time only; existing or continuing for a limited time; not permanent; ephemeral; transitory; as, temporary relief; a temporary position."

We think the better usage of the word "or" here is to mean in the alternative, *Hines* v. *Mills,* 187 Ark. 465, 60 S. W. 2d 181 (1933), because otherwise the term "part time" would add nothing to the class of persons excluded.

It is also suggested that Hargraves acquired a status of coverage under our decision in *Palmer* v. *Standard Life & Accident Ins. Co.,* 238 Ark. 585, 383 S. W. 2d 285 (1964), not only with respect to his status as an employee but also in connection with the exclusion. We do not agree. The policy in the Palmer case provided:

". . . Certifies that a Group Accident and Health Policy has been issued to the Employer shown below, and that the Employee named herein became

eligible for benefits, subject to the terms of the Policy, on the Effective Date indicated . . . provided that on the Effective Date shown above he is then regularly performing the duties of his occupation; otherwise the Effective Date shall be the date of his return to active duty."

The facts there showed that Palmer had a working arrangement with a grain company whereby he promoted sales of the grain company's commodities and the grain company in turn made collections from farmers for Palmer's work in dusting the crops. Since Palmer at the time of the injury was still performing the same occupation in the same manner as when the policy was issued, we held that he was an employee within the terms of the policy. In so doing we said: ". . . The great weight of authority is that the term 'employment', as used in a policy of group insurance, refers to a status rather than a contractual relationship." We understand the *Palmer* case as saying just that and do not understand it to mean that when a person obtains a certificate of insurance he then has a status of coverage notwithstanding the exclusions of the policy.

Affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. I feel that the majority has not only misconstrued the effect of the holding in *Palmer* v. *Standard Life & Accident Ins. Co.*, 238 Ark. 585, 383 S. W. 2d 285, but has also ignored a cardinal rule of construction of insurance contracts. I also feel that the majority has misconstrued appellant's argument relating to the application of the *Palmer* case. It treats the contention of appellant as though he were asserting that the rule there followed would be applicable to a "status of coverage." I do not so interpret the argument, but submit that ap-

pellant correctly asserts that the rule is applicable to his status as an employee other than a "part time or temporary employee."

I consider testimony by Hargraves as to his status with the grocery company other than that set out in the majority opinion to have significance. Hargraves received no compensation from the company except for fees paid for attendance at meetings of the board of directors. The only other payments made were the dividends paid him as a stockholder. He said that he signed company checks on numerous occasions and weekly payroll checks sometimes; that he would supervise preparation of the payroll and checks when Moore was absent; that he consulted with Moore about the stock, the condition of the trucks, the progress of salesmen in making company sales; that he checked the accounts receivable and often assisted in collection of delinquencies. He estimated that the duties he performed on behalf of the company required an average of an "hour or so" per day. He spent most of his time at the company's place of business during one week when both Mr. and Mrs. Moore were away because of illness.

The policy provided that individuals should become insured subject to policy provisions in accordance with applications for the policy. The policyholder, Interstate Grocer Company, was required to furnish the names of all individuals who from time to time became eligible for insurance. The individuals insured were defined as those who make written request to the policyholder on company forms and agree to contribute toward the payment of premiums, subject to certain conditions not here material.

Appellant asserts that he was insurable under the terms and conditions of the master policy. He also argues that appellee failed to meet its burden of proving that appellant was excluded from coverage under the policy, in view of the fact that appellee never denied

that the certificate issued to him and for which premiums were accepted was in full force and effect until the loss claimed by appellant was suffered. He relies upon *Palmer* v. *Standard Life & Accident Ins. Co.*, 238 Ark. 585, 383 S. W. 2d 285. In that case, we held that an insurer was liable to one whose status was not shown to be different at the time of his injury from what it was at the time of the issuance of a certificate under a group accident and health policy to him as an employee of the company to which the group policy had been issued, even though there had been no employer-employee contractual relation between the parties at either time. We said that "employment," insofar as an insurance policy of this type is concerned refers to a status rather than a contractual relationship. Palmer did not work for the company, but as the operator of a crop-dusting service, had a working arrangement with it, under which he indirectly promoted sales for the company, and it collected from customers for most of his work even though some of it was not done in application of materials purchased from the company. The services of Hargraves about which he testified seem no less those of an employee than those of Palmer.

Appellee asserts, however, that these services could not qualify him as more than a part-time employee. Yet it was willing to accept him as an insured under the policy at the time of the issuance of the certificate and to accept premiums on his account for a full year. Restitution of these premiums was not offered until January 16, 1968—well after the present claim arose. The application signed by Hargraves as an employee of Interstate went to appellee. Only a copy was retained by the Hargraves agency. The premium payments were made each month, at least through November, 1967. While Hargraves himself took the original application and may be said to have known of the exclusion, his status as the agent of appellee and a partner in the Hargraves Insurance Agency when the certificate was issued was as well known to the company as to him. Appellant tes-

tified that he had been "licensed for them since about 1947" and that the agency relationship still existed at the time of the trial. A letter from appellee to the Hargraves agency dated January 17, 1966, pertaining to the type of insurance involved here appears in the record. I find no reason why the holding in the *Palmer* case should not govern the employment status of Hargraves insofar as the exclusion here is concerned as well as one's status as an employee insofar as coverage is concerned.

Furthermore, the term "part time or temporary employees" can be construed to exclude only those persons whose employment status is on a casual, transient or transitory basis, without any idea of a permanent or prolonged status, rather than those whose regular employment is not full-time. The disjunctive "or" in this phrase may well be taken as the connection of an explanation of the words "part time" as meaning "temporary" rather than of two different alternatives. Such use is common and has been recognized by this court in many instances. This question has often arisen in connection with indictments. For example, the words "writing" and "paper" connected by the word "or" were held to mean the same thing, *i. e.*, a written instrument. *Blais* v. *State*, 94 Ark. 327, 126 S. W. 1064. In *Southwick* v. *State*, 126 Ark. 188, 189 S. W. 843, a case involving an indictment for pandering, we construed the penal statute, saying:

> "The use of the disjunctive 'or' between the words 'intimidation' and 'threats' in the statute was not in the sense of indicating that they are two different things, but was only used as an alias to designate the same thing by different words. The use of the words 'intimidation' and 'threats' thus connected by the use of the word 'or' only means one and the same thing. If the word 'or' had been used in the sense of disconnecting the words 'force,' 'fraud,' and 'intimidation,' so as to indicate that the pandering was done in either one of these ways, then

the indictment would have been uncertain, and hence defective."

In *Lemons* v. *State*, 155 Ark. 59, 244 S. W. 1, involving a charge of manufacturing intoxicating liquors, we said:

> "Appellant further contends that the indictment was defective because the disjunctive 'or' is used between the words 'compound' and 'preparation' and also between the words 'bitters' and 'medicated liquors.' It is obvious that the disjunctive 'or' between the words 'compound' and 'preparation' and also between the words 'bitters' and 'medicated liquors' as used in the statute (section 6160, C. & M.) and in the indictment, which follows the language of the statute, were not intended by the lawmakers nor by the pleader to designate separate and distinct offenses; but the word 'or' was used to connect different words meaning the same thing. The words 'compound' and 'preparation' in the statute are used synonymously, and likewise the words 'tonics' and 'medicated liquors' are synonymous. One of the most common uses of the conjunctive 'or' is to connect different terms expressing the same thing or idea."

This construction is not confined to consideration of penal laws or indictments. The definition of the word 'or' in Black's Law Dictionary reads, in part:

> "A disjunctive particle used to express an alternative or to give a choice of one among two or more things. It is also used to clarify what has already been said, and in such cases, means 'in other words,' 'to-wit,' or 'that is to say.' "

See also Webster's New International Dictionary, Second and Third Editions; The Random House Dictionary of the English Language, Unabridged Edition.

The words "chronic or persistent cough" contained

in a question in a life insurance policy application were considered as synonymous in *Blumenthal* v. *Bushire Life Ins. Co.,* 134 Mich. 216, 96 N. W. 17, 104 Am. St. R. 604 (1903). There the court said:

> "* * * The word 'or' is not always disjunctive. It is sometimes interpretative or expository of the preceding word. So, it is often used in the sense of 'to wit,' 'that is to say.' We think it was so used in this sentence, and that as used in this connection the two words are or were intended to be used in the same sense, the word 'chronic' being defined, in effect, as meaning 'persistent.' "

Such a construction was intended according to appellant's testimony. He said that this particular wording of the final exclusionary clause was written at the home office. As to persons to be insured at the time of the original application for the master policy, he said:

> "* * * All of the officers, all of the employees of the office, warehouse, everything other than the drivers; it was the intention that the drivers were not to be insured, and any part-time employees, such as on a rare occasion when there was a car that comes in to be unloaded on a siding, there are one to two semi-regular employees that they pick up to unload that car, and they didn't feel that the drivers, nor those people that were strickly [strictly] part-time employees on occasion, would be insured, because the company paid a portion of the benefits."

Of course, the trial court was not bound to accept appellant's testimony explaining any ambiguity that might appear in the exclusionary clause. It was bound to construe the clause strictly against the insurance company and literally in favor of appellant, resolving all doubts in favor of the latter. *Union Bankers Insurance Company* v. *National Bank of Commerce,* 241 Ark.

554, 408 S. W. 2d 898; *State Farm Mutual Auto Ins. Co.* v. *Baker*, 239 Ark. 298, 388 S. W. 2d 920. An ambiguous clause in a policy is to be construed to justify a recovery by the insured if a reasonable construction will do so. *United Equitable Insurance Company* v. *Vivion*, 243 Ark. 287, 419 S. W. 2d 597. When this is done, appellant, under all the facts and circumstances, should not have been held excluded from coverage of "all employees" upon a finding that he was not "a full-time employee."[1]

The majority completely overlook the fact that the exclusion of "[d]rivers and part-time or temporary employees," by use of the conjunctions "and" in one place and "or" in another, clearly places those to be excluded in only two, rather than three, categories. The majority construe the exclusion as if it read "drivers, part-time employees and temporary employees." It would have been such a simple matter for the insurance company to have written the exclusion thus if it intended it to be so. I suggest that it would have done so.

We have recently held against the insurer in construing an exclusion clause which could have more easily been construed in favor of the insurer than this one. See *Employers Mutual Liability Ins. Co.* v. *Puryear Wood Products Co.*, 247 Ark. 673, 447 S. W. 2d 139 (November 24, 1969). I would render judgment here for appellant, since there is no dispute about the amount of the claim.

---

[1]These words are not used anywhere in the policy.