Naoma R. GILL, Appellant,

v.

GENERAL AMERICAN LIFE INSUR-
ANCE COMPANY, Appellee.

No. 20185.

United States Court of Appeals,
Eighth Circuit.

Dec. 11, 1970.

John R. Lineberger, Fayetteville, Ark.,
for appellant.

Phillip Carroll, Little Rock, Ark., for
appellee.

Before MEHAFFY, GIBSON and
LAY, Circuit Judges.

GIBSON, Circuit Judge.

The plaintiff Naoma R. Gill seeks to
recover the proceeds of a certificate of
group life insurance issued under a mas-
ter policy by General American Life In-
surance Company to the Trustees of the
Arkansas Missouri Cotton Ginners Asso-
ciation covering the life of her deceased
husband, Lester B. Gill. Jurisdiction is
based upon diversity of citizenship.
From an adverse judgment rendered by
the trial court, the Honorable J. Smith
Henley, the plaintiff-beneficiary, ap-
peals.

The Association was a trade group
composed of various individual cotton
ginning companies. The group insur-
ance policy was taken out by the trust-
ees of the Association for the benefit of
the employees of the member companies.
The deceased, Lester B. Gill, was a
director of the Farmers Gin Company, a
corporate member of the Association,
from 1957 until his death on December
25, 1967. In January 1962, during a
promotional campaign designed to in-
crease membership in the group insur-

ance plan, Mr. Gill applied for membership. His application stated as his occupation "board of directors." A certificate of insurance was issued to him naming Mrs. Gill as beneficiary. Shortly afterwards, certain other insurance he carried was reduced. Premiums due on this certificate were regularly paid until his death. The evidence is clear that Mr. Gill performed no services for the corporation other than his ordinary duties as a director, for which he received no compensation.

The defendant insurance company tendered the premiums paid on the certificate, but resisted payment of the proceeds on the grounds that the deceased was not an "employee" as defined by the terms of the master policy, that an Arkansas statute prohibited the issuance of a certificate under a group life insurance policy to a director who was not otherwise an employee, and that therefore the certificate was void in its inception. Other defenses asserted by the defendant are not material to this opinion. The plaintiff contends that these defenses are barred by the incontestable clause in the master policy. The relevant policy and statutory provisions are as follows:

The master policy contained the following definition of employees who were eligible for coverage:

"The term 'Employees' is defined to mean: (a) All full time Employees of an Employer, including the individual proprietor of a sole proprietorship and the individual partners of a partnership where such sole proprietorship or partnership is an Employer."

The incontestable clause of this policy reads, "The validity of this policy shall not be contested, except for the nonpayment of premiums, after it has been in force for one year from its date of issue."[1] The regulatory statute under which this policy was issued, 6 Ark.Stat. Ann. § 66–3504 (1959), provides in pertinent part:

"The lives of a group of individuals may be insured under a policy issued to the trustees of a fund established by two (2) or more employers in the same industry * * *, which trustees shall be deemed the policy holder, to insure the employees of the employers * * * for the benefit of persons other than the employers * * *, subject to the following requirements:

"(1) The persons eligible for insurance shall be all of the employees of the employers * * *, or all of any class or classes thereof determined by conditions pertaining to their employment * * *. The policy may provide that the term 'employees' shall include retired employees, and the individual proprietor or partners if an employer is an individual proprietor or partnership. *No director of a corporate employer shall be eligible for insurance under the policy unless such person is otherwise eligible as a bona fide employee of the corporation by performing services other than usual duties of a director.*" (emphasis added.)

The question before us is whether a certificate of insurance issued under a group policy to a corporate director, without fraud or misrepresentation, is void as against public policy because it is prohibited by statute, or whether this defense is barred by the incontestable clause. We have been unable to discover a case directly in point in either Arkansas or other jurisdictions, but we conclude that the defense must be allowed under Arkansas law.

The cases most nearly in point involve master policies which contain both an incontestable clause and a definition of "employees" which, if applied, would exclude from coverage a deceased to whom a certificate of insurance had been issued. The authorities are hopelessly

---

1. 6 Ark.Stat.Ann. § 66–3510 (1959), requires an incontestable clause effective after a two year period.

split on the question of whether the incontestable clause bars the insurer from raising the defense that the insured was not an eligible employee. [Those cases rejecting the defense adopt the theory that the incontestable clause bars any defense which is not specifically excepted in the clause itself and which the company could have discovered by investigation, while those allowing the defense take the view that the clause cannot be used to enlarge the coverage of the policy nor to compel the company to accept risks and hazards not within the scope of the policy.] *See generally,* Annotation, Misrepresentation as to Employer-Employee Relationship as within Incontestability Clause of Group Insurance, 3 A.L.R.3d 632 (1969); in addition to the cases therein cited, compare First Pennsylvania Banking and Trust Co. v. United States Life Ins. Co., 421 F.2d 959 (3d Cir. 1969), with Baum v. Massachusetts Mutual Life Ins. Co., 357 P.2d 960 (Okl.1960). However, none of these cases involve a statutory provision expressly prohibiting coverage of a director who does not otherwise qualify as an employee, and hence they are not precisely applicable to the instant case.

There are two Arkansas cases which are of some relevance to the case at hand, both involving certificates issued under group health insurance policies.

In Palmer v. Standard Life and Accident Ins. Co., 238 Ark. 585, 383 S.W.2d 285 (1964), a group health insurance policy was issued to the employer, the Mid-South Grain Company, naming the plaintiff as an employee, and a certificate of insurance was issued to him under it. When Palmer filed a claim, the insurance company resisted payment on the grounds that he was not an employee of the grain company. The evidence showed that Palmer operated a crop-dusting service. He promoted sales of the grain company's products and in turn the company collected fees from the farmers for his crop dusting work, which were paid over to him. Approximately 90 per cent of his payments came from fees collected by the company, and in some cases the company paid him even when the farmer had not paid the company. Under these facts, the Arkansas Supreme Court held that since he was considered an employee at the time the policy was issued, and since there has been no change in his "status" with the company, he was entitled to coverage.

The plaintiff contends that, while the Arkansas Supreme Court did not speak directly in terms of estoppel, the *Palmer* case stands for the proposition that where an insurance company issues a certificate of group insurance to a person connected with an employer and where that person's "status" with the employer is not subsequently altered, the company is estopped to deny his eligibility as an employee. While this might appear to be a plausible reading of the *Palmer* case, we think it cannot be so applied in the instant case for two reasons. In the first place, there was no question in *Palmer* of a statutory restriction such as is involved in this case. Secondly, that reading of *Palmer* has been substantially undermined by the recent Arkansas case of Hargraves v. Continental Assurance Company, 247 Ark. 955, 448 S.W.2d 942 (1970).

*Hargraves* involved a certificate of group health insurance issued to a vice president of a company under a master policy which excluded from coverage "part time or temporary employees." The Arkansas Supreme Court first determined that Hargraves' duties as vice president were not sufficient to qualify him as a full time employee of the company and hence he could only be considered to be a part time employee. The Court then held that since part time employees were specifically excluded from the policy, the insurance company was entitled to resist liability on this ground, even though a certificate had been issued to Hargraves.

The plaintiff in *Hargraves* made the same argument with respect to the *Palmer* case as does the plaintiff in the instant case, namely that since his status

with the company had not changed from the time that the certificate was issued, the issuance of the certificate barred the defense of the exclusion. However, the Arkansas Supreme Court rejected this argument on the grounds that Palmer was in fact an employee at the time of his coverage. The Court said that "We * * * do not understand it [the *Palmer* case] to mean that when a person obtains a certificate of insurance he then has a status of coverage notwithstanding the exclusions of the policy." 448 S.W.2d at 945.

 The reasoning underlying the *Hargraves* opinion would appear to control this case. There the exclusion of the plaintiff as a member of the eligible class was a written term of the policy. Here the exclusion of the plaintiff as a member of the eligible class is not an express term of the policy, but is a requirement of the statute under which the policy was written. This would appear to be an appropriate case for the application of the rule that "A statute applicable to a contract of insurance in force at the time of the making of the contract enters into and forms a part thereof, must be read in connection therewith in construing the terms of the policy, and controls in case of conflict * * *." 44 C.J.S. Insurance § 302 (1945). While the statutory prohibition on the eligibility of directors for group life insurance does not expressly require that limitation to be written into every issued policy, that requirement seems to be implied in the statutory provision applicable to group life insurance policies as a whole:

> "*Group contracts must meet group requirements.*—(1) No life insurance policy shall be delivered in this State insuring the lives of more than one individual * * * unless in compliance with the other applicable provisions of this chapter." 6 Ark.Stat. Ann. § 66–3501 (1959).

Under these circumstances, the statute must be given effect, notwithstanding the intentions of the contracting parties themselves.

> "Such a statute is one that prescribes the legal operation of contracts, not one that affects factual interpretation. If in exact obedience to the law, the specified provision is integrated into a written contract in exact terms, the provision must be interpreted and given effect in accordance with the intention of· the· legislature, irrespective of how the contractors understood it. Exactly the same result is reached even though the parties know nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary." 3 A. Corbin, Contracts § 551 (1951).

*Cf.* General American Casualty Company v. Austin, 125 F.Supp. 721 (E.D.Ark. 1954) ; Aetna Casualty & Surety Co. of Hartford v. Brashears, 226 Ark. 1017, 297 S.W.2d 662 (1957).

 Since the statute, when read together with the policy, prohibits the insuring of a corporate director under a group policy who is not otherwise qualified as an employee, the incontestable clause should not be a bar to this defense. If it were, the parties would be able to avoid the positive prohibition of the statute merely by making the contract and then waiting until the expiration of the period of contestability. Such a procedure, if approved, would vitiate the force of the statute. Tulipano v. United States Life Ins. Co., 57 New Jersey Super. 269, 154 A.2d 645 (1959).

 The plaintiff also contends that, even if the defense is not barred by the incontestable clause, the insurance company is estopped to assert it because it issued the certificate, kept it in force for over five years, and continuously accepted the premiums on it. Only a brief word needs to be said with respect to this contention. The statute clearly expresses the public policy of the state of Arkansas. While the reasons for the prohibition are not immediately apparent,

the district judge suggested that "at least one purpose of the declaration was to insulate group insurers from demands of corporate employers that their non-employee directors be blanketed into their group insurance programs and thereby gain the benefit of the cheaper rates that are characteristic of group insurance." Whether this be the reason for the prohibition or not, the statute is clear and unequivocal in its terms. And a similar prohibition was included in another section of the statute. *See* 6 Ark. Stat.Ann. § 66–3502 (1959). The principles of estoppel do not apply to insurance policies which are issued in violation of public policy. Home Life Insurance Co. of New York v. Masterson, 180 Ark. 170, 21 S.W.2d 414 (1929); Northwestern National Casualty Company v. McNulty, 307 F.2d 432 (5th Cir.1962).

This case again points out the desirability of having diversity cases decided in the state courts. Here the federal court, which has no authority to declare state law, is called upon to apply state law. Where there is no state precedent directly in point and where a state supreme court would have to choose among contrary theories, it is not only difficult and hazardous but often unfair to the litigants for a federal court to decide what a state supreme court might ultimately hold on the same issue. The federal courts can only give their best judgment, often erroneous, on what course the state might follow. These questions should either be litigated in the state courts or, in the opinion of the writer, a certification procedure adopted so that the federal courts could obtain a definitive state opinion on the issue, as has been done in four states. Fla.Stats.Ann. § 25.031 (1961); Hawaii Rev.Laws 1955, § 214–26 (Laws 1965, Act 8); Me.Rev.Stats.Ann., Tit. 4 § 57 (Supp. 1966); Wash.Rev.Code, C. 2.60 (1966 Supp.). However, where that is not done we can only proceed by analogizing state cases of varying relevance, and where the federal district judge has made a ruling or decision that is not contrary to state law and one that is not

strongly felt by us to be erroneous, it is difficult for us to say that he has misinterpreted state law.

The judgment of the district court is affirmed.