**GENERAL AMERICAN LIFE INSURANCE COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**Alice Kiech CHARLEVILLE, Defendant-Appellant.**

**No. 55389.**

Supreme Court of Missouri,
Division No. 1.

Sept. 13, 1971.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 11, 1971.

---

3. Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33.

Murphy & Kortenhof, Edward E. Murphy, Jr., Jospeh M. Kortenhof, St. Louis, for respondent.

Charles R. Judge, Dubail, Judge, Kilker & Maier, St. Louis, for appellant.

WELBORN, Commissioner.

General American Life Insurance Company began a declaratory judgment action to determine whether or not it was liable

on a certificate of insurance covering Clem Whistle under a group policy issued by General American to the Arkansas-Missouri Cotton Ginners Association, Inc., Insurance Fund. Alice Kiech Charleville, former wife of Whistle and beneficiary designated by him, counterclaimed, seeking judgment for $20,000, the amount of insurance provided, plus attorneys' fees and 12% damages, under § 66–3238, Ark.Stat. Ann. Trial court found that Whistle was not insured at the time of his death and entered judgment against counterclaimant who has appealed.

Effective July 1, 1953, General American issued its Group Insurance Policy No. G–7063 to the Arkansas-Missouri Cotton Ginners Association, Inc., Insurance Fund. The policy provided life insurance upon employees of members of the association who participated in its insurance fund. The plan was a so-called self-administered plan, with the association handling enrollment under the plan, collecting the premiums from the member employers and certifying coverage whenever a claim was presented. Insured individuals were issued certificates showing the insurance provided persons enrolled under the plan. The certificates were prepared by General American and issued by the association upon enrollment under the plan.

On April 19, 1963, Whistle Gin Company, the operator of a cotton gin at Whistleville, Arkansas, applied to the association, of which it was a member, for insurance of its employees under the group policy, which at that time provided accidental death and dismemberment insurance and hospital expense insurance in addition to life insurance. Clem Whistle executed an enrollment card, showing the date of his birth, the date of his employment (August 1, 1955), his occupation as "Farmer" and naming his then wife, Alice Kiech Whistle, beneficiary. Other employees of Whistle Gin Company also enrolled under the plan.

The association issued a certificate of insurance to Clem Whistle, effective June 1, 1963. It showed life insurance coverage of $20,000 for "Proprietors, Partners and Officers: Under Age 60." Clem Whistle, on June 1, 1963, was president of Whistle Gin Company. The premiums were thereafter paid for the coverage afforded the gin company's officers and employees.

In February, 1966, Alice Whistle obtained a divorce from Clem and she subsequently remarried. In August, 1966, Clem, a diabetic, fell into a coma and was hospitalized in Memphis, Tennessee, where he died in November, 1966.

Following Clem's death, his former wife, unquestionably the named beneficiary, sought payment of the $20,000 coverage ostensibly provided on Clem's life. The insurer resisted payment on the grounds that, subsequent to his death, the insurer had learned that Clem was not a "full-time" employee of the Whistle Gin Company and that coverage under the group policy was limited to full-time employees of member employers. The insurer brought this action, seeking to vindicate its position.

The beneficiary counterclaimed for the amount of the coverage, $20,000, basing her claim on the grounds that Arkansas law required any limitation upon eligibility for insurance, imposed under a group policy, to be expressed in the certificate issued to the person purportedly covered and that the certificate issued to Clem contained no provision requiring that he be a "full-time employee." She also invoked the incontestability clause found in the master policy and asserted that the insurer was estopped to deny liability because of payments under the hospitalization coverage of the policy which had been made by reason of Clem's hospitalization. The trial court found that Clem was not eligible for insurance under the group policy and declared that no obligation to defendant Alice Kiech Charleville arose by reason of the death of Clem. The trial court found against Alice on her counterclaim and she has appealed.

On this appeal, no contention is advanced that Clem was eligible for insurance under the terms of the master policy which pro-

vided coverage to "full-time employees," and defined "full-time employees" as those who worked at least thirty hours a week. The Whistle Gin Company operated on a seasonal basis, generally between September and December of each year. It had only two full-time regular employees, the manager-bookkeeper and the ginner who was employed on a year around basis. Clem, who had previously been vice-president of the company, was elected president following the death of his sister, who had previously held the office, in May, 1963. The sister had handled the application of Whistle Gin to become a participant in the group policy issued to the ginners' association. She had died before the application had been accepted and Clem was president on the effective date of Whistle Gin's membership, June 1, 1963. The gin operated largely for the benefit of members of the Whistle family who grew cotton although it ginned cotton for others. Clem's actual work for the company was minor and irregular. In 1965, he reported $550 income from Whistle Gin on his income tax return. He reported no other income from the gin company for the years here in question and had received no payments during 1966, the year of his death.

Acknowledging that Clem was not a full-time employee as defined in the master policy, appellant seeks reversal of the judgment below on the grounds that the certificate issued to Clem did not disclose the requirement of full-time employment, that the insurer waived the eligibility requirement and is estopped to assert it, and that the incontestability clause prevents assertion of such a defense to the beneficiary's claim.

■■■ The parties agree that the contract of insurance involved was an Arkansas contract and that the rights of the parties are to be determined by Arkansas law, which appellant pleaded in her counterclaim. See Burns v. Aetna Life Ins. Co., 234 Mo.App. 1207, 123 S.W.2d 185, 190 [1]. Unfortunately Arkansas law provides no ready answer to the issues raised.

Respondent asserts that it does, relying upon the case of Gill v. General American Life Insurance Co., E.D.Ark., affirmed, 8th Cir., 434 F.2d 1057. That case arose out of the group policy here involved. A certificate of insurance had been issued to one Gill, a director of Farmers Gin Company, a family operation. His only connection with the gin company was as a director, the court rejecting the claim that he had been a paid public relations representative of the company. The certificate issued on the life of Gill was held void and unenforceable by reason of § 66–3504, Ark. Stat.Ann., which makes a director of a corporate employer ineligible for group life insurance unless he is a bona fide employee, performing duties of employment other than the customary duties of a corporate director. The statute applied in Gill is limited to corporate directors. Clem was a corporate officer and at least a part-time employee of Whistle Gin Company. The statute does not declare that, as a matter of Arkansas law, group life insurance may not be extended to a person in Clem's position. Therefore, no stated public policy of Arkansas would be violated by extending insurance coverage to Clem and the Gill case is not here controlling.

In its opinion in Gill, the Eighth Circuit Court of Appeals noted the problem here presented. Observing the absence of Arkansas authority directly in point on the issue before it, the court stated (434 F.2d 1058–1060):

"The cases most nearly in point involve master policies which contain both an incontestable clause and a definition of 'employees' which, if applied, would exclude from coverage a deceased to whom a certificate of insurance had been issued. The authorities are hopelessly split on the question of whether the incontestable clause bars the insurer from raising the defense that the insured was not an eligible employee. Those cases rejecting the defense adopt the theory that the incontestable clause bars any defense which is not specifically excepted in the clause itself and

which the company could have discovered by investigation, while those allowing the defense take the view that the clause cannot be used to enlarge the coverage of the policy nor to compel the company to accept risks and hazards not within the scope of the policy. *See generally*, Annotation, Misrepresentation as to Employer-Employee Relationship as within Incontestability Clause of Group Insurance, 3 A.L.R.3d 632 (1969); in addition to the cases therein cited, compare First Pennsylvania Banking and Trust Co. v. United States Life Ins. Co., 421 F.2d 959 (3d Cir. 1969), with Baum v. Massachusetts Mutual Life Ins. Co., 357 P.2d 960 (Okl.1960). [Compare also Simpson v. Phoenix Mutual Life Insurance Company, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655, and Spitz v Continental Cas. Co., 40 Wis.2d 439, 162 N.W.2d 1.] However, none of these cases involve a statutory provision expressly prohibiting coverage of a director who does not otherwise qualify as an employee, and hence they are not precisely applicable to the instant case.

"There are two Arkansas cases which are of some relevance to the case at hand, both involving certificates issued under group health insurance policies.

"In Palmer v. Standard Life and Accident Ins. Co., 238 Ark. 585, 383 S.W.2d 285 (1964), a group health insurance policy was issued to the employer, the Mid-South Grain Company, naming the plaintiff as an employee, and a certificate of insurance was issued to him under it. When Palmer filed a claim, the insurance company resisted payment on the grounds that he was not an employee of the grain company. The evidence showed that Palmer operated a crop-dusting service. He promoted sales of the grain company's products and in turn the company collected fees from the farmers for his crop dusting work, which were paid over to him. Approximately 90 per cent of his payments came from fees collected by the company, and in some cases the company paid him even when the farmer had not paid the company. Under these facts, the Arkansas Supreme Court held

that since he was considered an employee at the time the policy was issued, and since there has been no change in his 'status' with the company, he was entitled to coverage.

"The plaintiff contends that, while the Arkansas Supreme Court did not speak directly in terms of estoppel, the *Palmer* case stands for the proposition that where an insurance company issues a certificate of group insurance to a person connected with an employer and where that person's 'status' with the employer is not subsequently altered, the company is estopped to deny his eligibility as an employee. While this might appear to be a plausible reading of the *Palmer* case, we think it cannot be so applied in the instant case for two reasons. In the first place, there was no question in *Palmer* of a statutory restriction such as is involved in this case. Secondly, that reading of *Palmer* has been substantially undermined by the recent Arkansas case of Hargraves v. Continental Assurance Company, 247 Ark. 965, 448 S.W.2d 942 (1970).

"*Hargraves* involved a certificate of group health insurance issued to a vice president of a company under a master policy which excluded from coverage 'part time or temporary employees.' The Arkansas Supreme Court first determined that Hargraves' duties as vice president were not sufficient to qualify him as a full time employee of the company and hence he could only be considered to be a part time employee. The Court then held that since part time employees were specifically excluded from the policy, the insurance company was entitled to resist liability on this ground, even though a certificate had been issued to Hargraves.

"The plaintiff in *Hargraves* made the same argument with respect to the *Palmer* case as does the plaintiff in the instant case, namely that since his status with the company had not changed from the time that the certificate was issued, the issuance of the certificate barred the defense of the exclusion. However, the Arkansas Supreme Court rejected this argument on

the grounds that Palmer was in fact an employee at the time of his coverage. The Court said that 'We * * * do not understand it [the *Palmer* case] to mean that when a person obtains a certificate of insurance he then has a status of coverage notwithstanding the exclusions of the policy.' 448 S.W.2d at 945."

The Palmer and Hargraves cases involved health insurance coverage and neither considered an incontestable provision of a master policy. However, the Hargraves case, the later pronouncement of the Arkansas court, is significant in its refusal to extend coverage beyond the exclusions of the policy.

No Arkansas case has been cited involving the effect of the incontestability clause of a group life policy where a certificate of insurance has been issued to a person not qualified under the terms of the master policy. Appellant cites Missouri State Life Ins. Co. v. Cranford, 161 Ark. 602, 257 S.W. 66; Standard Life Ins. Co. v. Robbs, 177 Ark. 275, 6 S.W.2d 520; Ponder v. Jefferson Standard Life Ins. Co., 201 Ark. 179, 143 S.W.2d 1115; and Fore v. New York Life Ins. Co., 180 Ark. 536, 22 S.W.2d 401. The Cranford case was concerned primarily with the effect of the death of the insured during the contestable period. Robbs and Fore involved the interplay of suicide and incontestability clauses. Ponder held that the incontestable clause does not preclude reliance upon a provision reducing coverage for misstatement of age.

Absent authoritative resolution of the question by the Arkansas courts, this Court makes its own determination, with consideration to applicable local authority. Handlin v. Burchett, 270 Mo. 114, 192 S.W. 1016, 1017 [1–3]; Stevens v. Missouri Pacific Railroad Company, Mo.Sup., 355 S.W. 2d 122, 128 [9–11]; Dodwell v. Missouri Pacific Railroad Company, Mo.Sup., 384 S.W.2d 643, 646 [1, 2]. However, Missouri authority is lacking on this particular issue. The case of Hall v. Missouri Ins. Co., Mo. App., 208 S.W.2d 830, relied upon by respondent, did not involve a group policy.

In that case, the court did hold that the incontestable clause did not preclude the defense that the insured was beyond the age limits specified in the policy, noting that "the incontestable clause presupposes a valid contract and not one void ab initio." 208 S.W.2d 833. In reaching that conclusion, the court relied upon the case of Langan v. United States Life Ins. Co., 344 Mo. 989, 130 S.W.2d 479, 123 A.L.R. 1409, in which the incontestable clause was held not to prevent application of the age adjustment clause, the same result reached by the Arkansas Supreme Court in the Ponder case, supra.

Considering the divergence of views in the foreign authorities, noted by the court in the Gill case, supra, the rule which admits questioning of eligibility for group insurance despite the incontestability clause appears more consistent with the generally accepted objectives and administration of group life insurance. The Hargraves case, supra, shows a reluctance on the part of Arkansas courts to extend coverage beyond the terms of the policy as written. If the "discoverability" test applied in Simpson v. Phoenix Mutual Life Ins. Co., supra, is to be applied, self-administered policies, such as that here involved, will be practically eliminated. Such plans, by reducing the cost of insurance, do provide substantial advantages for insured members.

▬ We therefore conclude that the incontestable provisions of the group master policy and of Arkansas law do not preclude reliance upon the defense that Clem was never eligible to obtain the benefit of the group policy because he was not a "full-time employee" within the eligibility requirement of the policy.

▬ Turning to the contention that the failure of the certificate issued to Clem to delineate the qualifications for coverage precludes reliance by the insurer upon the terms of the master policy, Arkansas courts have held that notice provisions found in the master policy but not in the certificate issued to the insured may not be relied

upon to defeat recovery by the insured. Missouri State Life Ins. Co. v. Foster, 188 Ark. 1116, 69 S.W.2d 869; Missouri State Life Ins. Co. v. Johnson, 186 Ark. 519, 54 S.W.2d 407, 409. See Yarbrough v. General American Life Insurance Company, W.D.Ark., 241 F.Supp. 448. In Lawrence v. Providential Life Insurance Company, 238 Ark. 981, 385 S.W.2d 936, and Watts v. Minnesota Mutual Life Insurance Co., 240 Ark. 72, 402 S.W.2d 111, exclusions found in the master policy but not contained in the certificate and not mentioned in the circular describing the coverage provided were held to be unavailable to the insurer. In Spicer v. Colonial Penn Life Insurance Company, Ark., 449 S.W.2d 704, the master policy contained a requirement that the insured personally sign the application for insurance. In holding that the insurer could not rely upon such provision which did not appear in the application or certificate, the court stated (449 S.W.2d 705 [3]):

"In common fairness, if the company intended to attach exceptional importance to a personal signature, it should have inserted unmistakable notice to that effect in the form of application. In a very similar case the combined promotional leaflet and application purported to describe the coverage of the policy, with its exceptions. We held that the company could not introduce new limitations in the master policy that would have reduced the coverage that the applicant had a right to expect. Lawrence v. Providential Life Ins. Co., 238 Ark. 981, 385 S.W.2d 936 (1965)."

None of those cases involved the threshold question here presented of eligibility for insurance under the terms of the master policy. In the Hargraves case, supra, the court noted that the application upon which the certificate of insurance issued "made no inquiries about the status of the applicant relative to temporary or part time employment." 448 S.W.2d 943. Nevertheless, the court looked to the terms of the master policy in determining the question of eligibility to insurance. In our opinion, this case indicates that Arkansas law does not consider the question of eligibility for coverage in the same light as questions of notice, etc., where silence of the certificate precludes reliance upon the terms of the master policy.

The knowledge situation precludes a finding on behalf of appellant on her waiver argument. Knowledge is an essential of waiver. Phoenix Ins. Co. v. Flemming, 65 Ark. 54, 44 S.W. 464, 467; Planters' Mutual Ins. Co. v. Loyd, 67 Ark. 584, 56 S.W. 44, 45. The burden of establishing all elements of waiver is upon the party asserting such a defense. Phoenix Ins. Co. v. Flemming, supra; Planters' Mut. Ins. Co. v. Loyd, supra.

In this case, the most that appellant's evidence showed was a possibility of constructive knowledge on the part of the association by reason of Clem's statement on his enrollment card that his principal occupation was "Farmer." Arkansas law does not consider the employer in a group policy the agent of the insurer. Metropolitan Life Ins. Co. v. Thompson, 203 Ark. 1103, 160 S.W.2d 852, 855. Therefore, even the constructive knowledge of the association would not be imputed to the insurer.

Cases relied upon by appellant in support of her waiver claim all involved knowledge by an agent of the insurer of noncompliance with the terms of the policy by the insured. In Springfield Mut. Ass'n v. Atnip, 169 Ark. 968, 279 S.W. 15, an agent of the insurer was informed, when accepting an application for a policy, that the insured was 60 years of age. Despite the by-law of the association limiting insurance to persons under the age of 55, the agent accepted the application and issuance of the policy in the light of such knowledge was held to constitute a waiver of the by-law provision. There is no occasion to distinguish each of the cases cited on this proposition, as all are along the lines of the Atnip case and distinguishable from the situation here.

**238**

Appellant asserts that payment by the insurer of ten claims for hospitalization benefits on seven dates between August 31, 1964 and November 8, 1966, aggregating some $2,512.46, must be considered on the waiver issue. Again, however, the knowledge essential for a valid waiver of Clem's ineligibility was not known to the insurer at the time of such payments.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.