## ALLISON v. ÆTNA LIFE INS. CO.
### No. 4876.

Court of Appeal of Louisiana. Second Circuit.

Jan. 9, 1935.

Thompson & Thompson, of Monroe, for appellant.

Shotwell & Brown, of Monroe, for appellee.

MILLS, Judge.

The petition in this case alleges that on May 30, 1929, Masur Bros. applied to the Ætna Life Insurance Company for a group life insurance policy on its employees, which issued June 1, 1929, and was designated group policy No. 4511, and that among other things, it provides:

"The amount of insurance which eligible employees may apply for shall be in accordance with the following classification: * *

"All other female employees, $1,000.00."

It alleges further:

"That your petitioner, a female employee of said Masur Brothers, and in active service in its department store in the city of Monroe, Ouachita Parish, Louisiana, known as 'The Palace,' came within the class of 'all other female employees—$1,000.00.' "

That she was issued a certificate stating that defendant company had insured her life under said group policy for $1,000.

"That thereafter and on January 1, 1932, petitioner at the time being an employee of the said The Palace, the said certificate referred to in the preceding paragraph was taken up by the Ætna Life Insurance Company of Hartford, Connecticut, and in lieu thereof another certificate was issued to petitioner whereby the amount of insurance was increased from $1,000.00 to $2,000.00, and under date of January 6, 1932, a rider was attached to said group policy above referred to changing the insurance table for the class applicable to petitioner from $1,000.00 to $2,000.00; that said rider was made retroactive and became binding as of January 1, 1932."

That premiums due under the policy and the two certificates have been paid to the date of filing suit and have been accepted and retained by the defendant company. That the policy and certificate contain the following: "If any employee while insured hereunder becomes totally disabled before age 60 and if the disability will presumably prevent the employee for life from engaging in any occupation or employment for wage or profit, the company will pay to the employee, in lieu of all other benefits, the amount of insurance in force upon such employee's life at the time the disability commenced."

That on January 5, 1932, before reaching the age of 60, while an employee of the said the Palace, petitioner became totally and permanently disabled because of progressive polyarthritis.

"That due proof of said disability, giving all information requested by the Ætna Life Insurance Company of Hartford, Connecticut, was timely submitted to the said Company on forms provided by it."

That attached to and made part of this petition is a photostatic copy of the group policy and rider and the original certificate. That, defendant having refused to pay the amount due under said policy and certificate, plaintiff should have judgment for $2,000, with interest and costs.

The policy, made a part of the petition, among other things, provides:

"Employees in active service on June 1, 1929, are immediately eligible for insurance."

"The insurance of any employee shall automatically cease when the employee fails to make the required premium contribution, or upon termination of employment; except that if any employee is absent on account of sickness or injury, temporarily laid off, granted leave of absence, pensioned or retired, his insurance shall continue until the company receives written notice from the employer that such insurance shall terminate."

That the employer shall give the company written notice of all employees whose employment is terminated. That the company will issue to the employer for delivery to each insured a certificate showing the amount and terms of the insurance.

It contains the following incontestability clause: "This policy shall be incontestable, except for non-payment of premiums, as to insurance in force at the date hereof after one year from the date of issue of this original contract, and as to insurance of any new employee after one year from the time such insurance takes effect as herein provided; but written notice of the death or permanent total disability of an employee while insured hereunder shall be given the company at its Home Office within one year after cessation of the payment of premiums in respect to such employee; and if such notice is not given, the company shall not be liable for any payment on account of such death or permanent total disability."

The rider, dated January 6, 1932, but made effective as of date January 1, 1932, provides in part for an insurance table increasing the insurance of all other employees to $2,000, and that "Insurance (original and increased) for any individual employee shall become effective only if such employee is in active service at the time such insurance is to commence on the individual life, otherwise upon return to active service"; also "Any individual insurance which becomes effective under the policy shall be incontestable after one year from the date such individual insurance became effective, except for non-payment of premium."

The pertinent parts of the certificate, dated January 1, 1932, are: That the insurance of Kate Smith Allison under group policy No. 4511 is increased to $2,000; that the insurance will be payable if the employee becomes permanently totally disabled before age of 60; that the insurance will automatically cease upon termination of employment; that notice of claim for benefits by reason of permanent disability should be given immediately direct to the company; that such notice shall be given within one year after cessation of the payment of premiums and if not so given the company shall not be liable.

A printed form letter, apparently gotten up by defendant company but sent to plaintiff over the printed name of Masur Bros., is physically attached to the petition, but is not referred to therein, and therefore cannot be considered a part of it.

To the petition and the attached documents defendant interposed an exception of no cause or right of action, which was overruled. Defendant preserved its rights under the exception and on appeal urges that the ruling of the lower court should be reversed, the exception sustained, and plaintiff's suit dismissed. The grounds relied upon in argument and brief are:

(1) That the petition does not allege that plaintiff was in the active service of the Palace on January 1, 5, or 6, 1932.

(2) That it does not allege affirmatively that she presented satisfactory proof of disability and that notice was not immediately given.

It is well settled that an exception of no cause or right of action should be overruled if any cause at all is stated; that, where there are distinct and separate demands, the sufficiency of the allegations as to each may be separately attacked. In this case there is a single demand for $2,000. Unquestionably, a cause of action is stated as to the original insurance, leaving the question as to its increase to be determined on the merits upon the allegations contained in the petition and the contents of the attached documents, together with the evidence admissible under them. Considering the requirements as to notice, quoted above, we consider the allegations of the petition, while perhaps vague, sufficient to sustain a cause of action.

We think the exception was properly overruled.

After the overruling of this exception defendant answered, admitting the issuance of the original policy and certificate, setting up that petitioner's employment by Masur Bros. ceased on November 10, 1931, and that plaintiff submitted a claim for disability in which she swore that the permanent disability was incurred on November 11, 1931; that defendant advised plaintiff that it stood ready to pay her the $1,000, the amount of insurance in force on November 11, but that she has refused to accept same; that on January 6, 1932, said policy No. 4511 was modified in part as follows:

"For employees not duly insured under this policy prior to January 1, 1932, and for employees becoming eligible on or after that date, the table appearing in the section of the policy entitled 'Insurance Schedule,' shall be inoperative and the following shall be effective in lieu thereof:

### "Insurance Table

"All other employees $2,000.00."

The modified agreement further provided that insurance issued prior to January 1, 1932, may on that date be adjusted to conform to the new table; that the certificate dated January 1, 1932, showing that plaintiff is insured for the sum of $2,000, was accompanied by a letter from Masur Bros. which informed plaintiff that this increased insurance was only in force, "provided you are in active service on the date of this certificate"; that the rider attached to the original group policy expressly provides that original and increased insurance shall become effective only if such employee is in the active service of Masur Bros. at the time such insurance is to commence, otherwise upon return to active service; that all agreements provide that insurance shall automatically cease upon failure to make the required premium contribution or upon termination of employment; that plaintiff was not employed by the month, but was only paid for days on which she actually worked; that she has not worked for Masur Bros. or received wages from them since November 10, 1931; that the modification, the certificate, and the rider increasing the insurance to $2,000 never became effective as to plaintiff for the reason that she was not in active service when they were executed and has not since returned to active service; in the alternative, that the modification only insured and was intended to insure against future, not already existing, disability; also, in the alternative, that the certificate of increased insurance issued under the erroneous assumption that she was in active service, and should be accordingly canceled.

Defendant also pleads estoppel based upon the assertion made by plaintiff that she was disabled on November 11, 1931.

There is little dispute as to the facts in the case. Plaintiff was an active employee of Masur Bros. at the time of the issuance of the original group policy, qualified under it, and was issued a certificate insuring her under the terms of the policy against death or disability in the sum of $1,000. She terminated her employment with Masur Bros. because of indisposition on November 10, 1931, and never returned. She did not know what her trouble was. Doctors who examined her on November 11th found her suffering from polyarthritis. They felt that she was permanently totally disabled, but did not want to tell her so unless certain treatments failed. These did fail; the doctor informing her, he says, six to eight weeks after November 11th, that she could work no more. He cannot make the time of this notification more definite. She says she was told on January 5, 1932. As she is not contradicted in this and the date conforms to the doctor's estimate, we consider it established that plaintiff was permanently totally disabled when she quit work on November 10th, but did not know it until January 5th following.

On August 15, 1932, on the company's form, plaintiff gave preliminary notice of her disability. In it she states that the symptoms first became known November 10, 1931; that the total disability began and that she last worked on the same day; that she first consulted a physician on the next day, November 11th.

On September 16, 1932, she filed her permanent total disability claim for $2,000, payment of which was refused by the company.

Under the group policy Masur Bros. paid the premiums on their employees' insurance based upon their ages, but in turn collected from the employees 60 cents per thousand of insurance. The testimony shows that they paid out more than they collected, but the deficit was absorbed by them. They continued to pay premiums on plaintiff's insurance, original and increased, up to and inclusive of March, 1933. Mrs. Allison made her payments to her former employers throughout the same period. At the end of March the insurance company sent Masur Bros. a credit memorandum covering the payments of Mrs. Allison's premiums after January 1, 1932. Masur Bros. attempted, by

check, to return this amount to the company, but it refused to accept it, saying that it belonged either to Masur Bros. or Mrs. Allison.

When representatives of the insurance company came to Masur Bros. to solicit the increase in the group policy, they were told that Mrs. Allison had been absent on account of illness for about a month and a half, but the insurance company never received notice that her employment had terminated until the filing of her preliminary proof in August.

Defendant makes an attempt to show that plaintiff is not prevented by her disability from engaging in the occupation of singing for a wage. It is shown that she took eighteen months' training as a singer, and that she is paid $1 a week for singing at her church, which she returns to the church as her contribution. This cannot be considered a serious employment.

In the lower court there was judgment for plaintiff as prayed for, from which defendant has appealed.

We find no merit in the plea of estoppel based on the statements in the preliminary notice of disability or claim for insurance, for the reason that there is nothing in either document incompatible with the true facts in the case and for the further reason that neither statement has been acted upon in any way by the company.

Defendant admits its liability for, and asserts its willingness to pay, the original insurance of $1,000, but vigorously opposes the payment of the increase. It contends:

1. That the evidence fails to show that plaintiff is totally and permanently disabled within the meaning of the policy sued on.

Dr. Tisdale, the only physician testifying, says he does not think that there is any possibility of her ever being able to work; that he is confident her disability is permanent. As the policy only requires that the disability will presumably prevent the insured from working, this testimony is more than sufficient. As stated, we do not consider her church singing as a real employment for a serious wage or profit.

2. That plaintiff did not furnish satisfactory or timely proof. As the proof submitted was upon the forms furnished by the company, properly filled out, it was sufficient. As the policy provides that notice should be given immediately and shall be given within a year, we think notice within the year is sufficient. This is not a case of liability insurance where prompt notice is essential.

3. That plaintiff was not in the active service or employment of the Palace at the time the insurance was increased.

This is an undisputed fact. The defense was never waived by the company. Their representative was told that she was absent on account of sickness, but never that she was not expected to return nor that she had not returned on January 1, 1932. The employer is expressly required in the group policy to give notice of the termination of the employment of its insured employees. This it did not do.

The letter accompanying the certificate of increase is filed in evidence, and contains the following: "This certificate is evidence of insurance in force upon your life under a group insurance policy provided you are in active service on the date of this certificate."

Plaintiff testifies positively that she quit the service of Masur Bros. on November 10, 1931, and never re-entered same. She was then aware when this certificate was tendered her that she was ineligible for the increased insurance. We think that this defense would defeat plaintiff's recovery for the increased amount, but for the incontestability clause in the policy and certificate.

Defendant first contends that this clause cannot avail because it is not pleaded. No Louisiana cases are cited in support of this objection. Under our system of pleading, the plaintiff is not required to reply to affirmative allegations in the answer. All such are taken as denied, and all defenses are open. As the plea of incontestability is a reply to an affirmative defense, it does not have to be pleaded.

Such a stipulation creates a short statute of limitations in favor of the assured, within which limited period the insurer had to test, if ever, the validity of the policy. Such stipulations are valid. It has been properly said: "Such a stipulation ought to be an incentive to the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy is issued, while the matter is fresh, and thus it operates fairly between the parties."

Such a stipulation is neither unreasonable nor contrary to public policy. Cooley's Briefs on Insurance, vol. 5, p. 4484.

The period of contestability on the increased policy ran for one year from January 1, 1932. The statement in the preliminary notice, dated August 15, 1932, that total disability began November 10, 1931, and that in

the proof of claim dated September 16, 1932, plaintiff last worked on November 13, 1931, fully informed the company that plaintiff was not actively employed by Masur Bros. when the increased certificate issued, yet the company took no steps to cancel this certificate until after the limitation had run.

As we understand the law, this limitation of contestability applies to questions involving the validity of the policy and not those involving coverage. Metropolitan Life Ins. Co. v. Conway, 252 N. Y. 449, 169 N. E. 642.

This rule does not conflict with the decision in Bernier v. Pacific Mutual Life Insurance Company of California, 173 La. 1078, 139 So. 629, 88 A. L. R. 765, which holds that a question of coverage was made incontestable by the express exclusion from the incontestability clause of other such questions, but not including that before the court.

The question as to whether or not the policy was invalidated by the fact that plaintiff was not actively in the employ of the firm covered by the group policy at the time of this increase is one of validity and not coverage. It, being excepted neither expressly nor by implication, is affected by the incontestability clause and is barred as a defense thereby in this case.

A more serious defense is that the increased policy was intended to cover future and not past disability. It will be noted that the policy provides as to disability: "If any employee while insured hereunder becomes totally disabled. * * *"

The rider contains the following: "Nothing contained herein shall be held to alter or affect any of the terms and conditions of this policy other than as herein stated."

Nothing is stated affecting the disability clause.

The certificate of increased insurance issued January 1, 1932, reads thus: "If an employee while insured under the policy becomes totally disabled. * * *" Both the rider and the certificate then expressly contemplate any disability incurred while insured under the policy and not only disability occurring while the employee is insured under the rider or increased insurance certificate. The rule is too well established to require citation that insurance policies where ambiguous or doubtful are construed strongly against the insurer. The natural inference that only future disability is covered is overcome by the language of the documents.

We therefore find that the increased insurance is due for the disability incurred before its issuance, as it was incurred while the employee was insured under the policy. The final alternative plea of defendant that the increased policy was void because issued in error is barred by the incontestability clause.

For the reasons above assigned, the judgment appealed from is affirmed.

TALIAFERRO, J., dissents.