497 P.2d 641

Shirley J. CRAGUN, aka Mrs. Ronald N. Cragun, Plaintiff and Appellant,

v.

The BANKERS LIFE COMPANY, Des Moines, Iowa, Defendant and Respondent.

No. 12750.

Supreme Court of Utah.

May 23, 1972.

Ellett, J., dissented and filed an opinion.

Walker E. Anderson, Salt Lake City, for plaintiff-appellant.

R. M. Child, Ray, Quinney & Nebeker, Salt Lake City, for defendant-respondent.

TUCKETT, Justice:

The plaintiff brought this action as beneficiary of an insurance policy issued by the defendant on the life of the plaintiff's husband. The defendant refused payment and tendered a return of the premium based upon the defendant's claim that the insured was ineligible for coverage under the policy.

Each of the parties moved for a summary judgment and the court below granted the defendant's motion and entered judgment of no cause of action in its favor. From that judgment the plaintiff has appealed.

On or about December 1, 1964, the defendant issued its group life insurance policy to the trustees of Music Operators of America. Norman W. Cragun was the proprietor of a coin-operated record-player business which he conducted in addition to his regular employment. He qualified as an employer member under the terms of the policy, and his son, Ronald N. Cragun, applied for coverage under the group policy as an employee of Cragun Music Company. Ronald N. Cragun assisted his father in the music business on a part-time basis and in addition to his regular employment. Under the terms of the policy the term "actively employed" means employment . . . for 15 hours or more per week.

On February 28, 1970, the insurance company notified Ronald N. Cragun of the termination of the entire group policy. On March 16, 1970, Ronald N. Cragun returned his certificate to the company and requested conversion to special ordinary life insurance in the amount of $2,000. He also represented to the company that he had terminated his employment with the Cragun Music Company on the last day of February, 1970. On March 30, 1970, Ronald N. Cragun submitted an application for conversion to ordinary life in the amount of $10,000. The employer's portion of the application was signed by Norman W. Cragun.

It is the defendant's contention that the decedent, Ronald N. Cragun, was not actively employed in the music business inasmuch as the record does not show that he worked at least 15 hours per week in assisting his father in the business. The defendant urges that the decedent not being eligible to participate in the group insurance plan, he was not eligible for coverage under the group policy, nor was he entitled to convert the policy into the individual policy involved in this case.

The group policy contained an incontestability provision which provided that the policy shall not be contested except for nonpayment of premiums. The wording of the provision is similar to the provisions of Section 31–23–9, U.C.A.1953, except that the statute provides a two-year period. The statute reads as follows:

The group life insurance policy shall contain a provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue, and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime nor unless it is contained in a written instrument signed by him.

We find no decision of this court construing the statute, however, similar statutes have been construed by the courts of other jurisdictions.[1] The defendant urges us to adopt the view that the incontestability clause of the policy precludes only those defenses which would have been invalid at the inception of the policy. That view is supported by a majority of the older decisions including one authored by Cardozo in Metropolitan Life Insurance Company v. Conway.[2] However, more recent cases do not follow that view. In a 1969 case New York adopted the view that the incontestable clause is viewed normally with reference to manner of death. Risks which are considered limitations are those which could not be ascertained by the insurer by investigation at the time the policy of insurance was issued.[3]

We are of the view that the incontestable period whether provided for in the policy or by statute is simply a period during which time the insurer may by investigation guard against risks it did not intend to assume.

█ As a further defense to this action the defendant claims that the decedent misrepresented the amount of the insurance he was entitled to convert under the provisions of the group policy. It should be noted that the decedent's application for the whole life policy contained the provision that the application might be modified by the company. The record discloses that the company did in fact modify the application and that it issued the policy which is the subject matter of these proceedings. We must assume that the defendant used its own discretion in this matter and that it was not induced to issue the policy by reason of any falsity on the part of the decedent.

We are of the opinion that the court below erred in granting the defendant's motion for a summary judgment. We are further of the opinion that the plaintiff's motion for such summary judgment should have been granted insofar as it pertained to the face amount of the policy.

The decision is reversed. Plaintiff is entitled to costs.

CALLISTER, C. J., and HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting).
I dissent.

I think we need not concern ourselves about the group insurance policy and the fraud which the Craguns practiced in getting Ronald insured under that policy. The thing which seems to me to be controlling is his falsification in stating that he had terminated his employment as of

1.  Baum v. Massachusetts Mutual Life Ins. Co. (Okl.), 357 P.2d 960.

2.  252 N.Y. 449, 169 N.E. 642.

3.  Simpson v. Phoenix Mutual Life Ins. Co., 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655.

the last day of February, 1970. He had never worked 15 hours per week regularly for his father. In fact, the father testified in his deposition that for the year 1970 Ronald worked from zero hours to no more than 12 hours per week. Whatever work he did was without any remuneration and was done merely to assist his father from time to time as the occasion might arise.

Ronald never notified his father (his supposed employer) that he was terminating his services as of the last of February, 1970, and the relationship between father and son, whatever it might be, was the same after March 1, 1970, as it was prior thereto.

I think the securing of group coverage for Ronald was a fraud upon the company, and there was likewise fraud when the $10,000 policy was obtained. Even if the original fraud could not be used to defeat the coverage under the group policy, surely the repetition of the fraud to obtain an individual policy with a much higher coverage was a new fraud which could be used as a defense at least for the statutory two-year period.

I am not convinced that recovery could have been had even under the coverage of the group insurance policy. Aside from the fraud in originally placing Ronald under that policy, there was a further defense available to the company in that coverage would be afforded only to regularly employed employees who worked at least 15 hours per week; and if Ronald never complied with that provision, then he would not be covered.

I would affirm the trial court.

---

1. Rule 65B(a), U.R.C.P., has abolished the special forms as to particular writs.