(No. 45556.—)

HARVEY A. CRAWFORD Appellee, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

*Opinion filed November 30, 1973.*

GOLDENHERSH, J., dissenting.

Coryn, Patton and Walker, of Rock Island (William M. Walker, of counsel), for appellant.

Klockau, McCarthy, Schubert, Lousberg, Ellison & Rinder, of Rock Island, for appellee.

Owen Rall and Peter M. Sfikas, of Chicago (Peterson, Ross, Rall, Barber & Seidel, of counsel), for *amici curiae.*

MR. JUSTICE WARD delivered the opinion of the court:

This appeal presents the question whether an incontestability clause contained in a group life insurance policy bars the insurer from defending against a claim on the ground that the insured was not an employee eligible for insurance under the terms of the policy. The question is one of first impression in this court.

The plaintiff, Harvey A. Crawford, brought an action in the circuit court of Rock Island County against the defendant, The Equitable Life Assurance Society of the United States, to recover the sum of $10,000 as the beneficiary of his wife under a group insurance policy issued by the defendant. The case was heard upon the complaint, the defendant's answer, the motion of the plaintiff for summary judgment, and affidavits and stipulations filed by the parties. The circuit court granted the motion for summary judgment, and the appellate court affirmed. (7 Ill. App. 3d 691.) We granted the defendant's petition for leave to appeal. Leave was also granted to three other life insurance companies to file a joint brief *amici curiae.*

The undisputed facts are that effective January 1, 1965, the defendant issued a group life insurance policy to the Warm Air Heating and Air Conditioning Group Insurance Trust. The trust was established by the Warm Air Heating and Air Conditioning Association, for the purpose of providing insurance on the lives of employees of companies which were members of the association, as authorized by section 230(e) of the Insurance Code. Ill. Rev. Stat. 1971, ch. 73, par. 842(e).

One of the members of the association was the Crawford Heating and Cooling Company, Inc., whose president was the plaintiff. In December, 1964, shortly prior to the issuance of the policy, the plaintiff executed and delivered to the association an enrollment form which requested insurance for three persons, each of whom he represented to be employees of his company. Among the

three were the plaintiff himself and his wife, Rose A. Crawford. A certificate of insurance was thereafter issued to Mrs. Crawford in the face amount of $10,000. The certificate also provided for certain hospital and medical expense benefits. The plaintiff was named as the beneficiary. The premiums were paid by the Crawford Heating and Cooling Company. Mrs. Crawford died in February, 1969.

The master policy contained a provision that only a "full time employee" would be eligible for insurance, subject to a proviso that any employee "whose work week calls for a schedule of less than 32 hours shall not be eligible for insurance hereunder."

The insurance certificate issued to the decedent, while stating that the insurance provided under the policy was effective "only if the Employee is eligible for insurance," did not contain the specific full-time employment requirement found in the master policy. The enrollment form executed by the plaintiff, however, did state that an employee must work at least 32 hours a week, and the plaintiff marked the form in such fashion as to indicate that each of the three persons listed did meet that requirement. The same representation was made in regular monthly statements submitted by the plaintiff to the trustee with his premium payments from February, 1965, until February, 1969.

An individual application for insurance executed by the decedent also included a representation by her that she worked 32 hours a week or more. She stated further in her application that her position with the company was that of Secretary-Treasurer, and that she earned $7500 or more a year. Information as to position and salary was significant under the policy because these factors affected the amount of death benefits payable.

In point of fact the representations made by the plaintiff and by the decedent were false. Neither at the time when the policy issued nor at any time thereafter did the decedent ever complete a week in which she worked

32 or more hours. According to the complaint the extent of her duties was to spend several hours a month in assisting the plaintiff in drawing up proposals for contracts, and in taking night telephone calls when he was on a job or out of town. She received no compensation for these functions.

It is admitted that the defendant made no inquiry into the circumstances of the decedent's employment until after her death. The facts came to light when the plaintiff submitted his claim to the trustee accompanied by a death certificate, which listed the decedent's occupation as that of housewife. The trustee notified the defendant, and requested it to verify the decedent's eligibility. An employee of the defendant then made a single call to the bookkeeper of the plaintiff's company, from whom the decedent's employment status was ascertained. The defendant thereafter wrote to the plaintiff denying the latter's claim.

The master policy contains an incontestability clause which reads as follows:

> "The validity of this policy shall not be contested, except for the non-payment of premiums, after it has been in force for two years from the date of issue; and no statement made by any employee insured under this policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made, after such insurance has been in force prior to the contest for a period of two years during such employee's lifetime nor unless it is contained in a written application signed by such employee and a copy of such application is or has been furnished to such employee or his beneficiary."

The provision quoted above incorporates portions of section 231 of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 843), which specifies certain provisions

which must be contained in any policy of group life insurance issued or delivered in this State. Subsection (a) of section 231 requires inclusion of "A provision that the policy shall be incontestable after two years from its date of issue during the lifetime of the insured, except for nonpayment of premiums and except for violation of the conditions of the policy relating to military or naval services in time of war." Subsection (b) requires inclusion of "A provision *** that all statements made by the employer or trustee or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application."

As presented by the parties, the basic issue in this case is whether the eligibility of an employee relates to the "coverage" of the policy and may, therefore, be challenged notwithstanding the incontestability clause. Each party apparently considers that only the first portion of the incontestability clause in the policy, reading "The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue," is relevant in determining this issue. This view is presumably based on the assumption that the succeeding portion of the clause is intended only to deal with cases where proof of individual insurability is required. See Gregg, Group Life Insurance (2d ed.) 92.

The parties are in agreement that this case is governed by Illinois law. As we have previously noted, there appears to be no direct precedent in the decisions of this court applicable to the specific question presented.

An incontestability clause was considered in *Baker v. Prudential Insurance Company of America, 279 Ill. App. 5,* where recovery was sought under a group life insurance policy for the death of a former employee who had been discharged shortly prior to his death. The master policy specified that insurance should cease upon the termination

of employment. Despite the incontestability clause, the appellate court held that the insurer was not liable, stating (279 Ill. App. 5, 10):

> "The incontestable provision did not prevent the defendant insurance company from showing the policy was no longer in effect because Baker had been discharged a month before death. That provision of the policy would prevent the defendant in the instant case from contending that the policy was obtained by fraud or misrepresentation or upon any other ground, going to the original validity of the policy."

Historically the incontestability clause arose in the context of individual life insurance policies, and typically involved situations where the insured, in connection with his application for insurance, made statements respecting his health. In the absence of an incontestability clause, the insurer, upon the death of the insured, would be entitled to resist payment of the claim upon a showing that there had been a material misrepresentation of fact made by the insured or on his behalf, and that the contract of insurance was therefore voidable. The nature of the showing required is now defined by section 154 of the Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 766), and for present purposes we need not review the "refined distinctions" which had been applied prior to the enactment of section 154 in 1937. (See *Campbell v. Prudential Insurance Company of America, 15 Ill.2d 308, 310-313.*) The insurer, if he had no knowledge of the misrepresentation, was not ordinarily barred by the passage of time from making this defense, but might preserve it for use at such time as the insured died and the claim was presented for payment. The resulting situation was described by this court in *Powell v. Mutual Life Insurance Company of New York, 313 Ill. 161, 164-65,* in the following language:

> "In the earlier development of insurance contracts it not infrequently occurred that after the

insured had paid premiums for a large number of years, the beneficiaries under the policy found, after the maturity thereof by the death of the insured, that they were facing a lawsuit in order to recover the insurance; that in certain answers in the application it was said by the insurer, the insured had made statements which were not true, and the beneficiaries were not entitled to recover on the policy. It is needless to call attention to the fact that this situation gave rise to a widespread suspicion in the minds of the public that an insurance contract was designed largely for the benefit of the company. Recognizing this fact and seeing the effect of it on the insurance business, numerous insurance companies inserted in their policies what is now known as an incontestable clause."

Whatever the manner of its origin, in most States, as in Illinois, the matter of incontestability is now covered by statute. (See Keeton, Basic Text on Insurance, sec. 6.5(d) (1971).) It is evident that one effect of an incontestability clause is to permit recovery in cases of false or even fraudulent representations, simply because these had not been discovered prior to the expiration of the contestable period. Balanced against this undesirable result, however, was the social desirability of assuring a beneficiary that his claim could not be put to a challenge at some remote future time when the insured was dead and when others who might have testified in the beneficiary's behalf might also be unable to do so. See *Flanigan v. Federal Life Insurance Co., 231 Ill. 399;* Williston, Contracts, sec. 745 (3d ed. 1961); Holland, The Incontestable Clause, in Krueger and Waggoner, The Life Insurance Policy Contract, 57-58 (1953).

The conventional incontestability clause contains certain exceptions, most commonly one for the nonpayment of premiums. It is clear, however, that there are other,

unenumerated grounds on which an insurer may refuse to pay a claim after the period of contestability has run. The clause obviously does not preclude a refusal based on the fact that the particular event insured against has not taken place, and the insurer is thus not barred from "contesting" the claim or the interpretation of the coverage provisions advanced by the claimant. This point of distinction was described by Justice Cardozo, then the Chief Judge of the New York Court of Appeals, in the often cited case of *Metropolitan Life Insurance Co. v. Conway (1930), 252 N.Y. 449, 169 N.E. 642.* It was urged in that case that a rider in a policy excluding from protection death resulting from travel in an aircraft (except as a fare-paying passenger) conflicted with the incontestability provision contained in the New York insurance laws. The Court of Appeals held to the contrary, stating: "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazard to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

While the broad distinction drawn in *Conway* between a policy's limits of coverage and its validity has been quite generally recognized, differences of opinion have arisen as to its application, particularly with respect to group life insurance. (See, *e.g.,* Keeton, Basic Text on Insurance, sec. 6.5(d); Young, "Incontestable—As to What?", 1964 U. Ill. L.F.) With individual life insurance the policy identifies a specific individual by name, and it is relatively easy to distinguish between a question of coverage (the death of the insured or his death from some specific cause) and a question of validity created by antecedent misrepresentations on the part of the insured. In the case of group life insurance, however, the master policy undertakes to

provide insurance for a collection of unnamed persons defined only in terms of membership in a class, such as the employees of a certain company. To ascertain whether a person is insured necessitates a determination of whether he is in fact a member of the class. To the extent that that determination is based upon information furnished by the employer or by an employee or alleged employee, the question whether coverage exists tends to become intertwined with the question whether the coverage was obtained by false representations.

The courts of other States have considered a number of factual situations relating to eligibility, such as whether the insured is an employee at all, whether he was actively employed, whether he exceeded a specific maximum age, whether he was disqualified for some other reason, and whether he was incorrectly classified as to position. The decisions, which are collected in an annotation appearing in 26 A.L.R.3d 632, are not uniform in result.

The proposition that an insurer may challenge the eligibility of the insured has been advanced, either by direct holding or otherwise, with regard to the States of Arkansas, Idaho, Louisiana, Michigan, New Hampshire, Pennsylvania, Texas and Wisconsin, the decisions in some instances having been rendered by a Federal court called upon to ascertain and apply the law of the State in question. See *Gill v. General American Life Insurance Co. (8th Cir. 1970), 434 F.2d 1057; General American Life Insurance Co. v. Charleville (Mo. 1971), 471 S.W.2d 231; Pond v. Idaho Mutual Benefit Ass'n (1959), 81 Idaho 38, 336 P.2d 314; Allison v. Aetna Life Insurance Co. (La. App. 1935), 158 So. 389, modified, 161 So. 645; Rasmussen v. Equitable Life Assurance Society of the United States (1940), 293 Mich. 482, 292 N.W. 377; Fisher v. Prudential Insurance Co. (1966), 107 N.H. 101, 218 A.2d 62; First Pennsylvania Banking and Trust Co. v. United States Life Insurance Co. (3d Cir. 1969), 421 F.2d 959; Carp v. California-Western States Life Insurance Co.*

*(5th Cir. 1958), 252 F.2d 337; Spitz v. Continental Casualty Co. (1968), 40 Wis. 2d 439, 162 N.W.2d 1.*

The contrary view has been taken with respect to California, Oklahoma, Utah, and West Virginia. See *John Hancock Mut. Life Ins. Co. v. Dorman (9th Cir. 1940), 108 F.2d 220; Baum v. Massachusetts Mutual Life Insurance Co. (Okla. 1960), 357 P.2d 960; Cragun v. Bankers Life Co. (1972), 28 Utah 2d 19, 497 P.2d 641; Morris v. Missouri State Life Insurance Co. (1933), 144 W. Va. 278, 171 S.E. 740; Poffenbarger v. New York Life Insurance Co. (S.D.W. Va. 1967), 277 F. Supp. 726.*

The rule originally announced in Georgia was that eligibility could not be challenged (*Equitable Life Assurance Society v. Florence (1933), 47 Ga. App. 711, 171 S.E. 317*), but a subsequent Federal decision applying Georgia law looks the other way (*Washington National Insurance Co. v. Burch (5th Cir. 1959), 270 F.2d 300*). Conversely, the New York view, as first expressed in a Federal decision, was that the insurer might raise the defense of ineligibility (*Fisher v. United States Life Insurance Co. (4th Cir. 1957), 249 F.2d 879*), but a subsequent decision in 1969 by the New York Court of Appeals holds to the contrary (*Simpson v. Phoenix Mutual Life Insurance Co. (1969), 24 N.Y.2d 262, 247 N.E.2d 655*). It is the *Simpson* decision on which the appellate court principally relied in the case now before us.

We, however, consider that the question of eligibility is one which relates to the risk assumed and that a defense based on lack of eligibility is therefore not foreclosed by an incontestability clause.

It is, of course, true that eligibility may relate to circumstances existing at the inception of the contract (although it may also arise subsequently because of a change in employment status). It is also true that it may have been determined initially upon the basis of statements made by the insured or by his employer. And it may

be assumed that whether a person is an employee or is a full time employee is a matter affecting the willingness of the insurer to assume the defined risk at the defined premium charge, since employment or active or full-time employment may protect the insurer against adverse selection. See Gregg, Group Life Insurance (2d ed.) 34-36.

A challenge to eligibility does not, however, involve an attack by the insurer on the validity of the master policy. The defendant is not seeking to set aside the policy because of the misrepresentations made and the only aspect of the insurance plan which is affected is the payment sought by a single beneficiary. Moreover, even as to that beneficiary, while the defendant may have relied on his representations as well as those of the decedent, the defendant's success in this litigation does not require that the defendant establish the falsity of those representations as such. Had the plaintiff alleged that the decedent had been a full-time employee, instead of admitting that she was not, the defendant would of course have been put to his proof of ineligibility. But it would be the fact of eligibility or ineligibility which would be decisive, not what prior representations had been made on the subject.

As we read *Simpson,* it represents a basic departure from the distinction announced in *Conway* between matters concerning validity, to which the incontestable clause applies, and the risk assumed, to which it does not. The court in *Simpson* takes the position that some matters which relate only to the risk assumed are nevertheless covered by the incontestable clause, namely those risks which could have been discovered at the time the contract was entered into. (See 24 N.Y.2d 262, 267, 247 N.E.2d 655, 658.) We consider that conclusion both inapplicable to the policy we consider here as well as unsuitable to the group insurance situation with its constantly changing body of insured employees.

The incontestability clause of the policy, to begin

with, provides only that the validity of the policy may not be contested, and, as we have seen, its validity is not disputed.

A further factor which we deem significant was expressed in *Rasmussen v. Equitable Life Assurance Society of the United States, 293 Mich. 482, 487, 292 N.W. 377, 380,* in connection with a group policy excluding employees over a certain age: "[A] greater social good is served by enabling employed groups to obtain the most advantageous protection that their status warrants by restricting the invitation to particular age groups. Those who deliberately misstate their age and thus tend to lower the experience record of the group should not be placed by construction within the aegis of the incontestability provision."

Similarly, in the present case we can envisage the possibility of an adverse effect upon other employers if, by virtue of the incontestability clause, claims must be paid out upon the death of persons not meeting the standards of eligibility contained in the policy, in that actuarial calculations upon which the premium rate had been determined could be distorted, with the consequence of increased rates being imposed as the result of experience rating. See Gregg, Group Life Insurance (2d ed.) 220-229.

We do not mean to intimate that the occasions in which an employer would intentionally make a misrepresentation as to the eligibility of an employee would be of frequent occurrence. In the ordinary case the employer, who is paying all or a portion of the premiums, would not appear to have any incentive to create a supply of fictitious employees. The risk does exist, however, as indicated by the facts of this case and the somewhat similar facts in such cases as *Fisher v. Prudential Insurance Co. (1966), 107 N.H. 101, 218 A.2d 62.*

A third consideration underlying the decision we reach lies in the possibility that an employee who is eligible at the time when the policy is issued might, at

some point more than two years after the issuance date, cease to be a full-time employee, or, indeed, even terminate his employment. Were the incontestability clause to be applied in such a situation, there would appear to be no manner in which payment of a claim could be resisted if the employer or employer group had failed to notify the insurer of the change in the status of the employee. We think that the termination of employment is clearly a matter which the insurer may raise, as was held by the appellate court in *Baker v. Prudential Insurance Company of America, 279 Ill. App. 5.* On the same reasoning we believe that raising the question whether a person ever became an employee or became an employee of the type eligible for insurance is also not barred by an incontestability clause.

The principle of discoverability which governed the *Simpson* decision would put the insurer to an election between the risk of making payment on unwarranted claims or conducting an investigation, in some manner not dependent upon information provided by the employer or employee, into the employment status of every person purportedly insured. The contention is made here that the latter course of action would cause substantial expense and the unnecessary duplication of records. It would undermine group life insurance which is customarily conducted on a "self administrative" fashion with the employer or employer group maintaining the record of individual employees, thus reducing the cost of premiums. (*Cf. General American Life Insurance Co. v. Charleville (Mo. 1971), 471 S.W.2d 231, 236.*) The record made in this case does not supply us with evidence as to what overall method of administration was followed under the insurance plan involved or as to what the costs of some alternative method might be, and we therefore do not consider this contention in reaching our decision.

In addition to his contentions regarding the question of incontestability the plaintiff argued before the appellate

court that certain actions by the defendant constituted a waiver or an estoppel. These further issues were not considered by the appellate court nor were they argued here. We therefore reverse the decision of the court for the reasons given in this opinion, and remand the cause for disposition of any other contentions of the plaintiff which are properly before the appellate court.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. As stated by the majority, the parties are in agreement that this case is governed by Illinois law, and under Illinois law the fact that Mrs. Crawford was not a full-time employee working 32 or more hours per week cannot be raised as a defense. The majority appears to conclude that under the incontestability clause it is only the validity of the policy which may not be contested. This is clearly erroneous. The incontestability clause provides:

"[A]nd no statement made by any employee insured under this policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made, after such insurance has been in force prior to the contest for a period of two years during such employee's lifetime nor unless it is contained in a written application signed by such employee and a copy of such application is or has been furnished to such employee or his beneficiary."

As used in this policy the term "insurability" does not refer solely to the condition of the employee's health; it means "capable of being insured" or the "quality or condition of being insurable" (*Kahn v. Continental Casualty Co.,* 391 Ill. 445), and the only contention made by defendant of her ineligibility or lack of insurability is her failure to be regularly employed. Defendant accepted premiums covering Mrs. Crawford for 52 months, and admittedly, if she had been afflicted with some incurable

malady at the time the policy was issued, her "insurability" could not, after two years, have been contested. Neither logic nor the authorities cited support the drawing of a distinction between noninsurability based on illness and noninsurability based on failure to be employed for a minimum number of hours during each week. Indeed, if any distinction were to be drawn it should serve to more rigidly apply the incontestability clause to the latter situation for the reason that it is so easily discoverable.

The reason for the inclusion of the incontestability clause in policies of this type is obvious, and the fixing of the two-year period is clearly for the purpose of providing ample time for the insurer to investigate the veracity of the representations made. It is naive to believe that group insurers are trusting souls who accept, without question, the representations of the groups whom they insure, and the fact is that the policies provide for, and the insurers make, periodic inspections and audits. I cannot share the majority's apprehension with regard to the hypothetical case of the terminated employee. If the insurer failed to learn of the termination, and accepted premiums for a period of two years after its occurrence, that too should be governed by the incontestability clause. Under the terms of this policy the defendant was entitled to inspect and audit payroll records, and its failure to discover within the two-year period that Mrs. Crawford was not employed should not permit it to invoke a defense in clear violation of the express provisions of its policy. The rationale of *Simpson v. Phoenix Mutual Life Insurance Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655, which the appellate court followed, is preferable to the grounds upon which the majority rests its decision, and I would affirm the judgment.