Shirley B. SUSKIND, Plaintiff,

v.

AMERICAN REPUBLIC INSURANCE
COMPANY, Defendant.

Shirley B. SUSKIND, Plaintiff,

v.

NORTH AMERICAN LIFE & CASUAL-
TY COMPANY, Defendant.

Civ. A. Nos. 76–45, 76–46.

United States District Court,
D. Delaware.

Oct. 2, 1978.

Daniel L. Twer of Levin, Spiller & Twer,
P. A., Wilmington, Del., for plaintiff.

Roderick R. McKelvie of Richards, Lay-
ton & Finger, Wilmington, Del., for defend-
ants.

## OPINION

LATCHUM, Chief Judge.

Shirley B. Suskind ("Plaintiff") initiated separate actions in state court[1] against American Republic Insurance Company ("American Republic") and North American Life & Casualty Company ("North American") to recover, as the beneficiary, the proceeds of insurance on her husband's ("the decedent") life under two separate group life insurance policies issued by the defendants. · Both actions were removed to this Court and later consolidated pursuant to the defendants' motion. Rule 42, F.R. Civ.P. The defendants' answers denied liability on the basis of two separate defenses. Their first defense is that the decedent's (Mr. Suskind) insurance under the group life policies was rendered void by his alleged breach of duties that he owed to them. Their second defense is that the decedent never became eligible for insurance under the terms of the group policies. The plaintiff has moved for summary judgment[2] on the ground that the defendants are barred from raising the defenses asserted in their answers by the incontestability provisions which are contained in the policies, and duplicated in the margin.[3]

The following undisputed facts have been established: The decedent was a general agent for, and the sole proprietor of, Walter B. Suskind and Associates, an insurance agency in Wilmington, Delaware. In April of 1973 the decedent learned he had cancer of the pancreas. From that time until his death, approximately one year later, the decedent received various types of in-patient and out-patient treatment for his cancerous condition.

During the month of May, 1973 the decedent's agency applied for and obtained a group life insurance policy from each of the defendants, covering the decedent and his employees at the agency. The decedent received a commission from each of the defendants in connection with the purchase of the group policy by his agency. The decedent obtained insurance on his own life under those policies in the amount of $75,-000.[4] The plaintiff is the named beneficiary of that insurance coverage. In the course of obtaining the group policies and his individual insurance coverage under those policies, the decedent did not inform either defendant that he had cancer. At the same time, however, neither defendant required any evidence or statement from

---

1. All parties agree that Delaware law is applicable to this case. *See Rosenthal v. New York Life Ins. Co.,* 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330 (1938); *Wilmington Trust Co. v. Mutual Life Ins. Co.,* 68 F.Supp. 83 (D.Del. 1946), *aff'd,* 177 F.2d 404 (C.A.3, 1949), *cert. den.* 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351 (1950). To the extent that no Delaware courts have passed on the issues here involved the Court will determine the law of Delaware from all available data. *Handy v. Uniroyal, Inc.,* 327 F.Supp. 596, 603 (D.Del.1971).

2. A motion for summary judgment by the defendants was previously denied by this Court. Docket Item 62 (C.A. No. 76–45).

3. Delaware law requires that an incontestability provision be included in every group policy delivered in the State of Delaware. 18 *Del.C.* (1975) §§ 3111, 3113. The North American policy provides:
   INCONTESTABILITY: The validity of the Policy will not be contested by the Company after two years from the Effective Date except for non-payment of premiums. No statement made by an *Insured Person* or *Insured Dependent* relating to insurability will

be used in contesting the validity of the Insurance with respect to which the statement was made after the Insurance with respect to that individual has been in force prior to contest for a period of two years during the individual's lifetime nor will any such statement be used unless it is contained in a written instrument signed by him.
   The American Republic policy provides:
   INCONTESTABILITY. The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for one year from its date of issue. No statement made by any person insured under this policy, relating to insurability, shall be used in contesting the validity of the insurance with respect to such statement which was made after such insurance has been in force prior to the contest for a period of one year during such person's lifetime nor unless it is contained in a written instrument signed by the person.

4. The insurance under the North American policy was for a face amount of $50,000, and the insurance under the American Republic policy was for a face amount of $25,000.

the decedent concerning his insurability, i. e., his health or physical condition.

The effective dates for the North American and American Republic group policies and for the decedent's insurance under them were June 15, 1973 and June 1, 1973, respectively. Neither of the defendants took any action in court to contest the validity of either the group policies or the decedent's individual insurance under those policies until they filed their answers in this Court on March 3rd, 1976.[5]

A motion for summary judgment should be granted where "there is no genuine issue as to any material fact" and the undisputed facts are such that "the moving party is entitled to a judgment as a matter of law." Rule 56, F.R.Civ.P.; *Scott v. Plante*, 532 F.2d 939, 945 (C.A.3, 1976); *see* 6 Moore's Federal Practice ¶ 56.04[1] at 56–68 (2d ed. 1976). Plaintiff's motion should be granted, therefore, if the plaintiff is correct in her assertion that the incontestability provisions contained in the group life policies bar the defendants from asserting the two defenses which they have raised in their answers. *See Gifford v. Travelers Protective Ass'n of America*, 153 F.2d 209, 211 (C.A.9, 1946); *Cragun v. Bankers Life Co.*, 28 Utah 2d 19, 497 P.2d 641, 643 (1972).

## I. *The Eligibility Defense*

The first defense asserted by the defendants is based on their claim that the decedent never became eligible for insurance under the terms of the policies because the decedent did not meet the "Active Service" requirement of the North American policy and that he did not meet the "Actively at Work" requirement of American Republic policy.

On the other hand, the plaintiff argues that this defense is barred by the incontestability provisions. In support of that argument she cites the decisions of a number of courts across the country and claims that these decisions constitute the majority view. *See John Hancock Mutual Life Insurance Co. v. Dorman*, 108 F.2d 220 (C.A.9, 1939); *Equitable Life Assurance Society v. Florence*, 47 Ga.App. 711, 171 S.E. 317 (1933); *Freed v. Bankers Life Insurance Co.*, 216 N.W.2d 357 (Iowa Sup.Ct.1974); *Allison v. Aetna Life Insurance Co.*, 158 So. 389 (La. Ct.App.1935); *Bonitz v. Travelers Insurance Co.*, 372 N.E.2d 254 (Mass.Sup.Ct.1978); *Simpson v. Phoenix Mutual Life Insurance Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (N.Y.Ct.App.1969); *Baum v. Massachusetts Mutual Life Insurance Co.*, 357 P.2d 960 (Okl.Sup.Ct.1960); *Cragun v. Bankers Life Co.*, 28 Utah 2d 19, 497 P.2d 641 (1972). Defendants contend that this defense is not barred and, like the plaintiffs, they too cite the decisions of a number of courts across the country as supporting their position and claim that it constitutes the majority view. *See First Pa. Banking & Trust Co. v. United States Life Insurance Co.*, 421 F.2d 959 (C.A.3, 1969) (interpreting Pennsylvania law); *Washington National Insurance Co. v. Burch*, 270 F.2d 300 (C.A.5, 1959) (interpreting Georgia law); *Fisher v. United States Life Insurance Co.*, 249 F.2d 879 (C.A.4, 1957) (interpreting New York law); *Home Life Insurance Co. v. Regueira*, 313 So.2d 438 (Fla.Ct.App.1975), *cert. den.* 328 So.2d 844 (Fla.Sup.Ct.1976); *Crawford v. Equitable Life Assurance Society*, 56 Ill.2d 41, 305 N.E.2d 144 (1973); *Fisher v. Prudential Insurance Co.*, 107 N.H. 101, 218 A.2d 62 (1966).[6] Having read all of these cases, the Court agrees with the New Hampshire Supreme Court's observation that:

---

**5.** As used in an incontestability clause the term "contest" has been almost universally interpreted to mean "some affirmative or defensive action *taken in court* to cancel the policy or prevent its enforcement, to which the insurer and the insured, or his representatives or beneficiaries are parties." (Emphasis supplied). 95 A.L.R.2d 420 and cases cited therein. Delaware law is in accord with this majority view. *See Travelers Insurance Co. v. Caravasilis*, 21 Del.Ch. 164, 182 A. 412 (Del.Ch.1936).

**6.** The *Fisher* decision by the Fourth Circuit Court of Appeals can no longer be considered authoritative since the highest court in New York has come out with a more recent contrary decision. *See Simpson, supra.* The *Burch* decision on the other hand conflicts with an earlier decision by a Georgia court. *See Florence, supra.*

[i]t is difficult to explore even a small area of this subject without becoming lost in a maze of conflicting decisions and subtle distinctions.

*Fisher, supra,* 218 A.2d at 64. Nevertheless, the Court concludes that it is possible to solve the maze which was created by those cases.

The key to successfully negotiating the maze is the realization that the conflict between the cases is the result of differing views as to the meaning of an incontestability provision in the context of a group insurance policy. The cases upon which the defendants rely are premised on the proposition that an incontestability provision *only* prohibits contests as to the validity of the *group policy* itself. *See, e. g., Crawford, supra,* 305 N.E.2d at 150. Accepting that premise, their conclusion that the incontestability clause does not prohibit a contest as to individual eligibility could logically follow.[7] The premise underlying the cases upon which the plaintiff relies is that the incontestability provision *also* prohibits a contest as to the validity of *individual insurance* issued under a group policy.[8] *See, e. g., Simpson, supra,* 247 N.E.2d at 657; *Baum, supra,* 357 P.2d at 963. Adopting that premise, their conclusion that the incontestability provision bars a contest as to an individual's eligibility for coverage under a group insurance policy is equally valid. *See Meyer, supra* § 8.21 at 259; Coburn, *The Incontestable Clause,* 1969 Proc.Leg. Sec.Am.Life Conv. 67, 72 ("Coburn"). Therefore, in order to determine whether or not the plaintiff's motion should be granted with regard to this defense, the Court must decide whether the provisions under consideration prohibit contests as to the validity of the individual insurance under a group policy, or only contests as to the validity of the group policy itself.

It has been noted by several commentators that "often an unfortunate choice of language has been made for incontestable clause language." *Coburn, supra* at 83. The provisions in this case are no exception to that rule. They are composed of two sentences; the first which provides for general incontestability of the policy after a certain period, and the second which specifically prohibits certain types of contests as to the validity of individual insurance under a group policy when certain circumstances are present. As a result of this structure, and the language used, the provision is clearly susceptible to several different and conflicting interpretations.

At least one commentator has suggested that provisions like the ones in this case should be read as providing general incontestability protection for the group policy itself but only limited incontestability protection for individuals insured under the group policy. *See Coburn, supra,* at 86. This suggestion is based on two underlying assumptions. First it is assumed that because the first sentence refers to the "Policy" and the second sentence refers to "insurance", the two sentences must be viewed as separate and distinct provisions; the first applying only to those contests which attack the validity of the group life policy itself and the second applying only to those contests which attack the validity of the individual insurance issued under the group policy. The second assumption is that because the second sentence only specifically prohibits one type of contest, all other contests as to the validity of the individual

---

7. It is a well established principle that incontestability provisions only prohibit contests as to the validity of the policy and they do not prohibit contests which seek to establish that the event which has occurred was outside the risk assumed under the policy. *Wilmington Trust v. Mutual Life Ins. Co.,* 68 F.Supp. 83 (D.Del.1946), *aff'd,* 177 F.2d 404 (C.A.3, 1949), *cert. den.,* 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351 (1950); *Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642 (N.Y.Ct.App. 1930). Therefore, if the incontestability provi-

sion only applies to the group policy, a contest as to individual eligibility would not be prohibited because it would not challenge the validity of the group policy but only the scope of the coverage provided by that policy. *See* W. Meyer, *Life and Health Insurance Law,* § 8.21 at 259 (2d ed. 1972) (hereinafter *Meyer*).

8. At least one of those cases contained a provision which specifically provided that the individual insurance generally would be incontestable. *Bonitz, supra,* 372 N.E.2d at 256 n. 1.

insurance are allowed at any time. The Court is convinced, however, that such a construction is unacceptable.

█ It must be remembered that an incontestability provision was required in group life policies by Delaware law. The provision, therefore, should be interpreted in accordance with the apparent intent of the legislature. Thus, before the hyper-technical construction noted above could be accepted, it would be necessary for the Court to first conclude that the legislature intended to provide virtually absolute protection for the group policy holder, while at the same time providing almost no protection to individuals insured under the group policy.[9] This Court is unable to reach such a conclusion for several reasons.

In the first place, it is highly unlikely that the Delaware legislature intended to provide such limited protection for the individuals involved, in view of the fact that the concern which is the basis of most incontestability clauses is one for the protection of the individuals who are insured. *See Simpson, supra,* 247 N.E.2d at 657; *see also,* Note, The Incontestability Clause— Should It Be Interpreted To Protect The Insureds of A Group Insurance Policy, 51 Chicago-Kent L.Rev. 186 (1974). Moreover, it is unlikely that the Delaware legislature would be primarily concerned with providing broad protection for the group policy-holder when in fact there are few grounds on which a group policy can be contested. *See Meyer, supra* § 8.23 at 263.

The Court does not, however, have to rely on such negative reasoning, because there are at least two other factors [10] which af-

firmatively indicate that the Delaware legislature intended to make the individual insurance under a group life policy incontestable after a certain period of time.

First, there is Section 3111(a) of the Group Life Insurance Law, 18 *Del.C.* (1975) § 3111(a), which requires the inclusion of certain provisions, including the incontestability provision at issue here, in all group life insurance contracts delivered in Delaware. It provides that different provisions may be used instead of the ones set out in the statute, but *only if:*

> in the opinion of the Commissioner [they] are more favorable to the *persons insured,* or at least as favorable to the persons insured and more favorable to the policyholder.

18 *Del.C.* (1975) § 3111(a) (emphasis added). Clearly that section reveals that the Delaware legislature was *primarily* concerned with protecting the *individuals* insured under a group life policy.

The second factor is the history of the provision itself.[11] The Delaware statute requiring the inclusion of an incontestability provision is taken word for word from a model bill which was first adopted by the National Association of Insurance Commissioners (NAIC) in 1946 (1946 Bill). *See* 1946 NAIC Proceedings at 338. That bill in turn was a revision of an earlier model bill adopted by the NAIC in 1917 (1917 Bill). *See* 1918 NAIC Proceedings at 28.

The 1917 Bill required the inclusion of a one-sentence incontestability provision which was identical to the one required in individual life insurance policies and which at least arguably provided no protection at

---

9. The only protection provided to the individual insurance under this view is from contests based on statements made by the individual insured relating to his insurability, *e. g.,* as to the insured's health. In fact, however, the Delaware legislature was aware that evidence of insurability may not be required in the group policy context. *See* 18 *Del.C.* (1975) § 3115. The only protection granted by the legislature under this restrictive view, therefore, was a protection which may not even be needed in many cases.

10. It should also be noted that every court which has construed a provision similar to the one under consideration has construed it as providing that the individual insurance under a group policy is incontestable. *See Meyer, supra,* § 8.22, at 262–63.

11. For a complete discussion of the history and development of the incontestability provision, *see,* Shield, *A New Look at the Incontestability Clause,* 11 Ass'n of Life Insurance Council Proceedings at 23 (1952); Read, *The Evolving Incontestability Clause in Group Life Policies,* 14 Ass'n of Life Ins. Council Proc. 797 (1959).

all for the individual insured under a group policy.[12] *Compare Fisher v. United States Life Ins. Co.*, 145 F.Supp. 646, 650–51 (D.Md.1956), *aff'd*, 249 F.2d 879 (C.A.4, 1957) *with John Hancock Mutual Life Ins. Co. v. Dorman*, 108 F.2d 220 (C.A.9, 1939). At any rate, the committee which revised the 1917 Bill stated that it should,

> be revised so as to fit group life insurance and to provide for incontestability of the individuals insurance after two years.

1946 NAIC Proceedings at 142. While this history and the statements made by the insurance committee are not *conclusive* evidence of what the intent of the Delaware legislature was at the time it adopted this statute they provide at least some indication that the Delaware legislature intended to make individual insurance under a group policy incontestable.

For all of these reasons the Court finds that the *first sentence* of the provision should be read as providing that both the group policy, and the individual insurance issued under it, become incontestable when the period specified in that sentence has expired;[13] and the *second sentence* should be read as an exception which allows an ongoing right to contest the individual insurance, when the insured dies prior to the expiration of the contestability period and the contest is based on written statements by the insured relating to his health or physical condition.[14] *See* Gregg, *Group Life Insurance* 92 (3rd ed. 1962). In the present case the American Republic policy specified

a one-year period of contestability and the North American policy specified a two-year period. Since it is undisputed that the defendants did not contest the decedent's insurance within either of those periods and since a defense based on eligibility is a contest as to the validity of the decedent's insurance, which is not within the terms of the second sentence, the Court finds that the eligibility defense is barred by the incontestability provisions.

## II. The Fraud Defense

Defendants' second defense is based on a claim that the decedent owed certain duties to them.[15] They contend that the decedent breached these duties by making certain alleged misstatements to them and by not informing them of his cancerous condition. They further claim that these breaches of duty amounted to fraud sufficient to void the decedent's insurance issued under the group policy. Because the Court has already found that the decedent's insurance has become generally incontestable under the first sentence of the clause, this defense is also barred unless it is within the terms of the exception which is contained in the second sentence of the incontestability provisions. *See Provident National Bank v. Continental Assurance Co.*, 343 F.Supp. 29 (E.D.Pa.1972); *Greensboro National Life Ins. Co. v. Southside Bank*, 206 Va. 263, 142 S.E.2d 551 (1965).

The defendants argue that the fraud defense is within the terms of the second

---

**12.** That clause required the inclusion of a: provision that the policy shall be incontestable after two years from its date of issue, except for non-payment of premiums and except for violation of conditions of the policy relating to military or naval service in time of war.
1918 NAIC Proceedings at 28.

**13.** Under the Delaware statute the period specified cannot be more than two years. 18 *Del.C.* (1975) § 3113.

**14.** This Court's decision is not inconsistent with either the *Taylor* or the *Downs* decisions relied upon by the defendants. The defenses asserted by the insurance companies in those

cases were clearly within the terms of the second sentence; therefore, any reference by those courts to the effect of the first sentence was unnecessary to their decisions. *See Taylor v. American Heritage Life Ins. Co.*, 448 F.2d 1375 (C.A.4, 1971); *Downs v. Prudential Ins. Co. of America*, 130 N.J.Super. 558, 328 A.2d 20 (1974).

**15.** Defendants argue that the decedent owed a duty of full disclosure to them as a result of his status as an applicant for insurance and as a result of his dual role as both agent for the insurer and applicant for insurance. The Court expresses no opinion as to the validity of those contentions in the circumstances of this case.

sentence.[16] In support of that contention they rely principally on the decision of the Court of Appeals for the Fourth Circuit in *Taylor v. American Heritage Life Ins. Co.,* 448 F.2d 1375 (1971). *See also Downs v. Prudential Ins. Co. of America,* 130 N.J.Super. 558, 328 A.2d 20 (1974). That reliance is misplaced.

In *Taylor,* the insured stated on his application form that he was in good health and that he had no surgery other than minor dental surgery in the five years prior to the date of his application. In fact, however, he had received continuous medical and surgical treatment for cancer of the prostate during the four months prior to the date of his application. The insured died from this condition less than one year after his individual insurance under the group policy became effective. The *Taylor* court held that, on those facts, the insurance company was not barred from contesting the plaintiff's insurance on the basis of the written statements of insurability that he made in his application concerning his health and medical history. In so holding the *Taylor* court did rely on an incontestability clause that was virtually identical to the clause in this case.

■ The *Taylor* court's decision, however, is clearly distinguishable from the present case. The applications for individual insurance here did not require any information about the applicant's health or medical history. Nor did the decedent volunteer any such information. Indeed, the defendants rely primarily on the decedent's failure to say anything about his health or medical history. Moreover, to the extent that this silence by the decedent could be characterized as a "statement" that he was in good health, it would nevertheless not be available as a defense to this action. The only statements relating to insurability which are within the exception created by the second sentence are those statements which are *"contained in a written instrument signed"* by the insured. Any so-called "silent statement" by the decedent in this case would obviously not meet those criteria and a defense based on it would be barred.[17]

The defendants claim, however, that the decedent did make a least one statement [18] relating to insurability when he applied for insurance for himself under the group policy, and that such a statement was contained in a written instrument signed by him.[19] The statement relied upon was one made by the decedent on his enrollment card in which he indicated that he worked a minimum of 25 hours a week for the agency. There is some question as to whether or not the defendants could succeed on a claim that this statement as to "full-time" status or "eligibility" was false. *See* Annot., 57 A.L.R.3d 801 (1974). Regardless of the merits of the defense, however, the Court has concluded that this statement is not within the terms of the exception contained in the second sentence.

■ The second sentence only provides an ongoing right to contest individual insurance on the basis of written statements of

---

16. Alternatively, the defendants argue that the fraud defense they are asserting here is completely outside the scope of any incontestability clause because the fraud rendered the entire contract void *ab initio.* This argument is completely without merit. The general rule and the rule in Delaware is that a fraud defense is barred by an incontestability provision. *See Travelers Ins. Co. v. Caravasilis,* 21 Del.Ch. 164, 182 A. 412 (Del.Ch.Ct.1936). The defense asserted in this case is not outside that general rule. *See Schrader v. Prudential Ins. Co. of America,* 280 F.2d 355, 359 (C.A.5, 1960); 18 *Couch on Insurance 2d* §§ 72:71 & 72:72 (1968); *Appleman, Insurance Law and Practice* § 332 at 595 (1965).

17. The Court expresses no opinion as to whether the last part of the second sentence prohibits the use of non-written statements relating to insurability at any time or only after two years.

18. The defendants have identified other written statements by the decedent which were made in connection with the application for the group policy and which they claim were false. None of those statements, however, were statements relating to his insurability and thus they could not be within the exception contained in the second sentence of the clause.

19. The statement in question was made by the decedent on the American Republic enrollment card which he did sign.

the insured relating to his "insurability" and, while that term could possibly be construed to include the concept of eligibility, the Court concludes that such a construction would contravene the intent of the Delaware Legislature. Section 3115 of the Group Life Insurance Law requires the inclusion of a provision in each group policy:

> setting forth the conditions, if any, under which the insurer reserves the right to require a person *eligible* for insurance to furnish evidence of individual *insurability* satisfactory to the insurer as a condition to part or all of his coverage.

18 *Del.C.* (1975) § 3115. (Emphasis added). This provision indicates that the Delaware legislature was well aware of the distinction between the concepts of eligibility and insurability. Therefore when the legislature used the term insurability it must be presumed that it did not thereby include the concept of eligibility. Hence a written statement by the decedent relating to his eligibility cannot be considered to be a statement relating to his insurability and consequently a contest based on such a statement is not within the exception provided by the second sentence of the incontestability provisions of the policies. Therefore the fraud defense is likewise barred by the first sentence of the incontestability provisions of the policies.

Accordingly, summary judgment will be entered in favor of the plaintiff and against the defendant in both civil actions.